## WILLIAM B. WAUGH *v.* STATE OF MARYLAND

[No. 571, September Term, 1973.]

*Decided April 18, 1974.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Arthur Dale Leach* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, State's Attorney for Anne Arundel County,* and *Frank Weathersbee, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

"[F]or the purpose of the Fourth Amendment there is a constitutional difference between houses and cars." *Chambers v. Maroney*, 399 U. S. 42, 52, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970). As the ever-growing common law continues to require fresh responses to fresh questions, it poses (for Maryland) the new riddle: "Is a suitcase more like a house or more like a car?" In terms of functional analysis—the weighing of the nature of the sanctuary against the investigative imperative—a suitcase is, we hold, "more like a car." Before supplying the rationale for the answer, let us set the stage for the question.

The appellant, William B. Waugh, was convicted by an Anne Arundel County jury, presided over by Judge Ridgely Melvin, of possession of marihuana with intent to distribute. The only issue upon this appeal is whether eighteen bricks of marihuana,* the subject of the possession charge, were constitutionally seized from two yellow suitcases being carried by the appellant at the moment of his arrest.

The investigative spore led from Tucson, Arizona, via American Airlines through Dallas, Texas, to its denouement in the baggage claim area of the Baltimore-Washington International Airport (Friendship). That denouement came at shortly after 11:24 p.m. on August 22, 1972. Maryland State Police Corporal Warren Pitt, and two fellow officers, had gone to Friendship Airport to meet incoming flight 324 from Dallas and Tucson. They maintained simultaneous surveillances at the passenger gate and at the baggage claim area. The appellant was arrested moments after he picked up the two yellow suitcases. The suitcases were seized and opened and revealed the eighteen bricks of marihuana. Since the arrest, the seizure and the search were all warrantless, we look to the information then in the mind of Corporal Pitt to determine the constitutionality of his warrantless action.

Although Corporal Pitt observed the appellant, who matched perfectly the description then in hand, and

---

* The 18 bricks of marihuana, according to testimony, had an "approximate street value" of "a little over $10,000."

although Corporal Pitt observed the two yellow suitcases, which matched perfectly (even to the extent of baggage claim numbers) the description then in hand, Corporal Pitt had no direct and personal knowledge as to probable criminality on the part of the appellant or as to the probable presence of contraband in his impedimenta. All such suspicion came to Corporal Pitt through someone else. It is now axiomatic, however, that probable cause "may be based on hearsay information and need not reflect the direct personal observations" of the officer. *Aguilar v. Texas*, 378 U. S. 108, 114, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). It need only be shown that there was "a substantial basis for crediting the hearsay." *Jones, supra*, at 362 U. S. 269; *Stanley v. State*, 19 Md. App. 507, 515-522, 313 A. 2d 847, 852-857.

Early in the evening of August 22, Lt. Leon Tomlin, of the Narcotics Squad of the Baltimore City Police Department, received a telephone call from a colleague in Tucson, Arizona, one Detective Schwartz. Schwartz informed Tomlin about a shipment of marihuana believed to be en route from Tucson to Baltimore. Because the Friendship Airport is not within the strict geographic limits of Baltimore City, however, Lt. Tomlin passed the information on to Corporal Pitt of the Maryland State Police. Although Corporal Pitt was fully entitled to rely upon the "credibility" of Lt. Tomlin, as a fellow officer, Lt. Tomlin was shortly thereafter eliminated as an intermediate conduit in the transmission of information. Corporal Pitt, at 7:45 p.m., dialed 602-791-4643 in Tucson and put himself in direct contact by "view telephone" with Detective Schwartz. This police practice of making direct contact is a commendable one, if only in terms of simplifying ultimate judicial analysis by removing one intermediate level in the transmission of hearsay information. That Corporal Pitt, now in direct contact with Detective Schwartz, was entitled to rely upon this fellow law enforcement officer as a "credible" information source is not to be doubted. *United States v. Ventresca*, 380 U. S. 102, 85 S. Ct, 741, 13 L.Ed.2d 684 (1965);

*Rugendorf v. United States*, 376 U. S. 528, 84 S. Ct. 825, 11 L.Ed.2d 887 (1964); *Whiteley v. Warden*, 401 U. S. 560, 91 S. Ct. 1031, 28 L.Ed.2d 306 (1971); *Dawson v. State*, 14 Md. App. 18, 284 A. 2d 861; *Schmidt v. State*, 17 Md. App. 492, 302 A. 2d 714. What then was the information passed on to Corporal Pitt by this "credible" primary source?

Detective Schwartz furnished detailed descriptions of both the appellant and his luggage:

> "He described the subject as being a white male, approximately six feet one inches tall, a hundred and sixty pounds, approximately twenty-three years, shoulder length hair, a brown mustache, wearing an orange shirt with multi-colored tie, a brown sports coat and brown slacks, white boots and a white belt. And also this subject would be in possession of two American Tourister suitcases yellow in color, one being a three suiter suitcase and the other being a two suiter suitcase."

Detective Schwartz informed Corporal Pitt that the appellant had left Tucson on American Airlines flight 324 en route to Baltimore, with an intermediate stop in Dallas. Detective Schwartz gave Corporal Pitt the baggage claim numbers on the two suitcases. Detective Schwartz informed Corporal Pitt that the appellant's name was "either Waugh or Baugh; they weren't positive on the name." [1] Thus far, the information coming from Detective Schwartz was necessary in pinpointing the objects of the ultimate arrest and search, but was innocuous in terms of supplying a constitutional predicate for such actions. We turn now to the inculpatory substance of the hearsay information.

At the pretrial suppression hearing, Corporal Pitt was

---

[1]. At 9:30 p.m., Detective Schwartz put in a supplemental call to Corporal Pitt, reporting certain additional information. A Detective Lee of the Dallas Police Department had picked up the surveillance when the flight in question landed in Dallas. Detective Lee informed Detective Schwartz that the appellant and the two suitcases were still on board the plane when it left Dallas for Baltimore. The information from Detective Lee, reassuring though hardly critical, was also trustworthy, stemming from a "credible" law enforcement source and then being passed on to Corporal Pitt through an equally "credible" intermediary (Detective Schwartz).

asked whether he learned of the "basis of knowledge" for Detective Schwartz's allegation that the suitcases contained marihuana. Corporal Pitt replied:

> "He advised me that on information received from a reliable confidential informant, he went to the airport on information from this informant that this subject and the bags or luggage contained the marijuana. As a result of this information he advised me that he went to the airport, observed the luggage, observed the subject, as I described, and smelled what he knew to be marijuana from his past experience. He advised me that he had been in law enforcement for approximately ten to twelve years. And from his experience and his arrests had led to prior convictions for narcotic violations. As a result of the smelling of the suitcases and the information from the informant, in fact, did open the two pieces of luggage and did, in fact, observe **thirty-one bricks of marihuana in the above** suitcases."

Detective Schwartz further advised Corporal Pitt that he (Schwartz) had removed 13 of the 31 marihuana bricks, leaving 18 inside the suitcases, which he closed and sent upon their way.

### Probable Cause for the Suitcase Search in Maryland

We will address ourselves initially to the limited issue of whether probable cause existed, and will defer for the moment the further question of whether some additional factor (such as exigency or the arrest of the person) must 1) conjoin with the probable cause to justify a warrantless search (in the case of exigency) or 2) serve as an independent predicate for a warrantless search or seizure (in the case of an arrest of the person).

In this regard, we note initially that we are dealing with the search and seizure of the suitcases made by Corporal Pitt at approximately 11:24 p.m. at the Friendship Airport in Maryland and not with the search of the suitcases made

by Detective Schwartz some hours earlier in Tucson, Arizona. These were distinct actions with distinct predicates and only the latter of them (the Maryland search) was the direct object (in terms of probable cause) of the suppression hearing now under appellate review.

The appellant, somehow confusing the basis for the Arizona search with the basis for the Maryland search, argues that Corporal Pitt had no probable cause to believe that the two yellow suitcases arriving at the Friendship Airport contained contraband. He focuses his argument on the following testimony of Corporal Pitt, recounting information passed on to Corporal Pitt from Detective Schwartz in Tucson:

> "He advised me that on information received from a reliable confidential informant, he went to the airport on information from this informant that this subject and the bags, or luggage contained the marijuana."

The appellant points out that Corporal Pitt knew absolutely nothing about the "credibility" of Detective Schwartz's confidential informant in Tucson or about the "basis of knowledge" for that confidential informant's conclusion. The appellant's assertion is absolutely correct, but totally irrelevant on the issue of probable cause in Maryland. Because of the total dearth of information as to the "credibility" of that remote hearsay source or the "reliability" of his information and the total absence of any assurance that that source's assertions were not "purely conclusory," Corporal Pitt could not, of course, give any credit to that information. Corporal Pitt, however, was not called upon to credit that information.

Corporal Pitt had abundant independent reason to believe that the two yellow suitcases contained 18 bricks of marihuana: *Detective Schwartz had seen them there.* Detective Schwartz had opened both suitcases in Tucson, had counted out 31 bricks of marihuana, had removed 13 of the bricks, had allowed 18 bricks to remain in the two suitcases, and had then closed the cases up again. This was

the basis for Corporal Pitt's ensuing probable cause. Whatever antecedent information Detective Schwartz may have had was simply *his* spur to action. The information furnished by the confidential source may have instigated Detective Schwartz's investigation in Tucson, but it was not an element in the accumulation of probable cause by Corporal Pitt in Maryland. Whatever bearing it may have had upon the legitimacy of Detective Schwartz's actions, it did not bolster or erode the probative force of Detective Schwartz's direct observations. The information coming from the confidential informant was a matter to which Corporal Pitt could be utterly indifferent. The antecedent tip, trustworthy or untrustworthy, was subsumed in and made redundant by the observed fact. Corporal Pitt relied exclusively upon what Detective Schwartz saw. Corporal Pitt, for his part, was not called upon to sit in judgment on the constitutionality of the investigative conduct of the Arizona policeman. The absence of knowledge about the confidential informant does not, therefore, derogate one whit from Corporal Pitt's probable cause.

This situation is to be distinguished from that in which the primary hearsay source is a mere intermediate conduit for information from a more remote, secondary hearsay source. *Dawson v. State,* 11 Md. App. 694, 701-702, n. 3, 276 A. 2d 680. In such cases, the trustworthiness of the more remote information is critical because it represents the hard kernel of probable cause. In the present case, by way of contrast, **Detective Schwartz was not a conduit for more** remote information but was, rather, the direct source of the damning data. He did not transmit probable cause, but, by his observations, developed intervening probable cause. See *United States v. Valen,* 479 F. 2d 467 (3d Cir. 1973).

### *"Fruit of the Poisonous Tree" Doctrine*

The same issue—the constitutional predicate for Detective Schwartz's action in Tucson—may, however, come to us in another posture. The appellant apparently sought to have the suppression hearing not simply weigh the amplitude of probable cause but serve also as a "taint hearing." We will so

consider it. In that second posture, however, the relevant question needs to be framed in different terms. The issue in a "taint hearing" is not whether adequate probable cause exists (that is virtually a condition precedent to a "taint hearing"), but rather one of whether the acknowledged probable cause does or does not represent the "fruit of the poisonous tree."

The appellant claims that the search of his suitcases in Tucson was unconstitutional. He claims that when the knowledge thereby gained was passed on and was acted upon in Baltimore, there was an exploitation of the primary illegality. He claims, therefore, that the incriminating data in the mind of Corporal Pitt on the issue of probable cause was "the fruit of the poisonous tree." *Silverthorne Lumber Company v. United States,* 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920); *Nardone v. United States,* 308 U. S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939); *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963).

We have never resolved whether the "fruit of the poisonous tree" doctrine is or is not available on the issue of probable cause. In *Everhart v. State,* 20 Md. App. 71, 94, 315 A. 2d 80, we said:

> "We do not intimate what the answer might have been, had the appellant adequately raised at the suppression hearing, and adequately preserved for appellate review, an effort to look behind 'the four corners of the affidavit' in order to establish some primary taint, and then to apply the exclusionary rule to the ostensible fruits of that ostensible taint. We recognize that the whole body of law grown up around the 'fruits of the poisonous tree' doctrine, on the one hand, and the discernible and almost tidal retreat from the exclusionary rule by the Supreme Court, on the other hand, are in essential collision. We will not try to predict how that collision may ultimately be resolved."

*Probable Cause for the Suitcase Search in Arizona*

Fortunately, we once again do not have to resolve that

terribly troubled question, whereto powerful arguments can be made on either side. Significantly, the following critical information was also passed on from Detective Schwartz in Tucson to Corporal Pitt in Maryland:

"As a result of this information he advised me that he went to the airport, observed the luggage, observed the subject, as I described, and smelled what he knew to be marijuana from his past experience. He advised me that he had been in law enforcement for approximately ten to twelve years. And from his experience and his arrests had led to prior convictions for narcotic violations. As a result of the smelling of the suitcases and the information from the informant, in fact, did open the two pieces of luggage and did, in fact, observe thirty-one bricks of marijuana in the above suitcases."

Trained investigators are entitled to rely upon the sense of smell to establish probable cause, just as surely as they are entitled to rely upon the senses of sight, hearing, touch, or taste. *People v. Bleile,* 33 Cal. App. 3d 203, 108 Cal. Rptr. 682, 685 (1973). We are satisfied that Detective Schwartz had probable cause to believe that the suitcases contained marihuana.

### Suitcases and the Carroll Doctrine

The establishment of probable cause in Tucson, however, does not suffice to solve the problem of the legitimacy of the ensuing search. Continuing to focus in on the constitutionality of the Arizona search, we must determine whether probable cause to believe that a suitcase contains contraband may ever justify a warrantless search thereof. Unlike the situation later prevailing in Baltimore, reliance may not conveniently be had upon the "search incident to a lawful arrest" exception to the warrant requirement. The suitcases, when they were searched in Tucson, were completely unattended by the appellant. They were not remotely within a search perimeter measured from his person under *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969) — within his "lunge," his

"reach," his "grasp," within the area "that may fairly be deemed an extension of his person." Furthermore, there was no arrest in Tucson. If a warrantless search is to be condoned, it must, therefore, find some supporting theory other than that of a "search incident."

The two poles between which we steer have long been fixed. On the one hand, no amount of probable cause (even in the presence of exigency) will ever justify a warrantless intrusion into a fixed premises for the purpose of searching for evidence of crime.[2] This is the undisputed teaching of *Agnello v. United States*, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145 (1925); *Taylor v. United States*, 286 U. S. 1, 52 S. Ct. 466, 76 L. Ed. 951 (1932); *Johnson v. United States*, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948); *Jones v. United States*, 357 U. S. 493, 78 S. Ct. 1253, 2 L.Ed.2d 1514 (1958); *Vale v. Louisiana*, 399 U. S. 30, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970). As was said in *Coolidge v. New Hampshire*, 403 U. S. 443, 468, 91 S. Ct. 2022, 2039, 29 L.Ed.2d 564, 584 (1971):

> "Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure."

On the other hand, it has been recognized since 1925 that there is "a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motorboat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

---

2. In this regard, we are not referring to permissible warrantless intrusions into fixed premises to effect an arrest (with its attendant search incident) or under some other person-related exigency, as in *Warden v. Hayden*, 387 U. S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967), but only to a pure search for evidence *qua* search for evidence, where the search for tangible items is the primary purpose of the intrusion and is not a subsidiary incident of some other purpose.

*Carroll v. United States,* 267 U. S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543. See also *Husty v. United States,* 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629 (1931); *Scher v. United States,* 305 U. S. 251, 59 S. Ct. 174, 83 L. Ed. 151 (1938); *Brinegar v. United States,* 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Dyke v. Taylor Implement Mfg. Co.,* 391 U. S. 216, 88 S. Ct. 1472, 20 L.Ed.2d 538 (1968); *Coolidge v. New Hampshire, supra; Cady v. Dombrowski,* 413 U. S. 433, 93 S. Ct. 2523, 37 L.Ed.2d 706 (1973). " [W]hat may be an unreasonable search of a house may be reasonable in the case of a motorcar." *Preston v. United States,* 376 U. S. 364, 366-67, 84 S. Ct. 881, 11 L.Ed.2d 777 (1964). "Exigent circumstances" justify the warrantless search of an automobile, where there is probable cause, because the car is "movable" and because "the car's contents may never be found again if a warrant must be obtained." *Chambers v. Maroney, supra,* 399 U. S. at 51. " [T]he opportunity to search is fleeting . . ." *ibid.*

Between these two fixed points, where does a suitcase [3] lie? Even armed with probable cause and faced with exigent circumstances, what may a policeman do vis-a-vis a piece of luggage?

Although the *Carroll* Doctrine has frequently been referred to by the Supreme Court as "the so-called automobile exception," we are persuaded that its logic is more far-reaching. The reasons of necessity which permit warrantless searches of automobiles and other vehicles, upon the combination of probable cause and exigent circumstances, apply with equal force to suitcases and other readily movable containers. This is particularly so when they are consigned to a carrier and are, therefore, literally in transit, but the logical extension is not limited to situations where a common carrier is involved. The ultimate justification arises out of the exigency presented by actual or imminent mobility on a case-by-case basis.

---

**3.** The discussion herein, though phrased in terms of suitcases, applies with equal validity to cartons, boxes, and other readily movable containers. See Note, *Warrantless Search and Seizure—A Search Warrant Is Not Required Where There Is Probable Cause to Search a Chattel Consigned to a Carrier,* 5 St. Mary's L. J. 187 (1973).

In *Carroll,* the Supreme Court based its decision, in large measure, on the historical example of warrantless seizures of contraband "goods in the course of transportation." 267 U. S. at 149. It reviewed in detail a number of early statutes and concluded that "contemporaneously with the adoption of the Fourth Amendment we find in the First Congress, and in the following Second and Fourth Congresses, a difference made as to the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant." 267 U. S. at 151. The language of *Preston v. United States, supra,* indicated that "automobiles" did not exhaust the category on the less restrictive side of the search and seizure dichotomy, "Common sense dictates, of course, that questions involving searches of motorcars or *other things readily moved* cannot be treated as identical to questions arising out of searches of fixed structures like houses." 376 U. S. at 366 (emphasis supplied). *Cooper v. California,* 386 U. S. 58, 87 S. Ct. 788, 17 L.Ed.2d 730 (1967), intimated that an essential characteristic of the more restrictive side of the search and seizure dichotomy was the "fixed" nature of the property searched, in citing *Preston* for the proposition that because cars are "constantly movable" they may be searched with probable cause but without a warrant "although the result might be the opposite in a search of a home, a store, or other *fixed piece of property.*" 386 U. S. at 59 (emphasis supplied).

The Supreme Court of California faced the question squarely in *People v. McKinnon,* 103 Cal. Rptr. 897, 500 P. 2d 1097 (1972). It posed the question, at 500 P. 2d 1103:

> "In the case at bar we must determine whether the rationale of *Chambers* should be limited to searches of automobiles and similar self-propelled 'vehicles' such as trucks, trains, boats, or airplanes. Neither reason nor precedent compels such a narrow, mechanistic reading of *Chambers* and its predecessors."

We find completely persuasive the answer then furnished, at 500 P. 2d 1104:

"Is a box or trunk consigned to a common carrier for shipment to a remote destination a 'thing readily moved' or a 'fixed piece of property'? The answer, self-evidently, is the former. To be sure, such a box has neither wheels nor motive power; but these features of an automobile are legally relevant only insofar as they make it movable despite its dimensions. A box, which is a fraction of the size and weight of an automobile, is movable without such appurtenances. It is also true that a box or trunk, as distinguished from an automobile, may serve the double purpose of both storing goods and packaging them for shipment. But whenever such a box is consigned to a common carrier, there can be no doubt that it is intended, in fact, to be moved.

What is true of a box or trunk is true of all goods or chattels consigned to a common carrier for shipment. As they are no less movable than an automobile, the reasons for the rule permitting a warrantless search of a vehicle upon probable cause are equally applicable to the search of such a chattel."

A similar result was reached by the United States Court of Appeals for the Third Circuit in *United States v. Valen*, 479 F. 2d 467 (1973). There, as here, two suitcases were searched in Tucson, Arizona, shortly before their flight east. They were found to contain marihuana. There, as here, the ultimate seizures were made in the east. There the United States District Court for the Middle District of Pennsylvania overturned the conviction on the grounds that the warrantless search in Tucson was unconstitutional. In reversing that decision and reinstating the conviction, the Third Circuit reasoned that probable cause plus exigent circumstances did justify the warrantless search of the suitcases in Tucson:

" [T]he government relies on the 'exigent circumstances' exception to the warrant requirement announced in *Carroll v. United States* . . . and refined in *Chambers v. Maroney* . . . This exception to the warrant requirement, authorized for certain automobile searches, is premised on the theory that the mobility of the automobile presents a danger that contraband will move or disappear. Justice White put it succinctly: 'But when there are exigent circumstances, and probable cause, then the search may be made without a warrant, reasonably.'

The 'exigent circumstances' exception is not a per se rule to be applied indiscriminately to every automobile containing contraband, nor should it be applied to every object that has the capacity for movement. Rather, its application should depend upon an evaluation of attendant circumstances. At a very minimum there must be probable cause to make a search for contraband. . . . A further consideration is the reasonable possibility of the agent's loss of dominion and control over the object to be searched and the consequential loss of the contraband contained therein. . . .

. . . [T]he government emphasizes the extremely high mobility factor of the suitcases confronting Agent Clements. They were due to leave Tucson by air within the hour. They were destined for Scranton, Pennsylvania, with at least one plane change at New York. . . . Thus, it was reasonable for him to conclude that a very real possibility existed that the government could lose the contraband, important evidence of a possible violation of federal laws. . . . Under the totality of these circumstances, we hold that there were 'exigent circumstances' to make the search without the warrant." At 470-471.

In its legitimizing as well the warrantless seizure of the

suitcases in Scranton, after they had been placed in the trunk of the defendant's automobile, the court made clear that the "exigent circumstances plus probable cause" rationale was not restricted to movables then consigned to a common carrier, a point left in doubt by the California Supreme Court in *People v. McKinnon, supra:*

> "Unlike the BNDD search in Arizona, the Scranton search is distinguishable from Clements' search. First, the suitcases must be viewed as no longer in the exclusive custody of the government at the time of the search. Although agents continued to observe the movement of the suitcases, Valen had asserted a possessory interest over them. Second, the suitcases were removed from the locked trunk of Valen's automobile. The opening of the trunk, even though for the singular purpose of obtaining the suitcases, was a separate search; and we have concluded that this search is controlled by *United States v. Menke, supra.*
>
> . . .
>
> The order of the district court suppressing the marijuana evidence will be reversed." At 471-472.[4]

The decision of the United States Court of Appeals for the Second Circuit in *United States v. Johnson,* 467 F. 2d 630 (1972), is interesting, if only because it removes the suitcases, which it held were legitimately searched without a warrant, from common carriers specifically and from airline situations generally. Three bank robbers had been arrested. A "trustworthy" tip established that two suitcases, one of which contained a shotgun, could be found outside the rear door of a certain apartment building. The court held, at 639:

---

4. The Third Circuit was also able, as we have been, to avoid the question of whether a primary illegality in Tucson would have precluded a consideration of the product of that illegality as part of the probable cause for the warrantless seizure in Scranton:

> "Having concluded that none of the searches here involved violated Valen's constitutional rights, we do not consider Valen's 'fruit of the poisonous tree' arguments." At 472.

"We find little difficulty in concluding that the officers were justified in seizing the closed suitcases. It was not practical to secure a warrant because the suitcases could have been removed from their position outside the apartment building at any moment. The suitcases in this situation were similar to mobile automobiles. See, *Carroll v. United States* . . ."

The United States Court of Appeals for the Ninth Circuit, in *United States v. Mehciz*, 437 F. 2d 145 (1971), upheld the warrantless search of a "gray overnight suitcase" taken from the defendant as he alighted from an interstate flight and searched after he had been handcuffed. The court wobbled a bit in terms of supporting doctrine, posing the question in terms of a "search incident" (citing *Chimel*) and then answering the question in terms of "exigency plus probable cause" (citing *Chambers*). Notwithstanding the doctrinal fluidity, we find the answer instructive, at 147:

"The Supreme Court has expressly held that 'for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars.' . . . [W]e think it only reasonable to conclude that there is a corresponding 'constitutional difference' between a house and a suitcase."

And see *United States v. Maynard*, 439 F. 2d 1086 (9th Cir. 1971), and *Hernandez v. United States*, 353 F. 2d 624 (9th Cir. 1965).

The Court of Criminal Appeals of Texas, in *Chaires v. State*, 480 S.W.2d 196 (1972), upheld the warrantless search of two suitcases and a footlocker (found to contain marihuana) after they had been turned over to airline attendants for a flight from Austin, Texas, to Washington, D.C. The court held, at 199:

"When the Austin police were informed that the contraband was aboard an airliner, due to depart in minutes, they had probable cause to inspect the suspect cargo and, after verifying the agents'

suspicions, to seize it and arrest its owners, before one or all were flown from their jurisdiction.

We are further inclined to conclude that the rationale of the United States Supreme Court in *Chambers v. Maroney* ... should control here. In dealing with the propriety of an on-the-spot warrantless search of a moveable vehicle, the court concluded that the requisite 'exigent' circumstance for a warrantless search existed where peace officers had sufficient probable cause and the moveable object was 'a fleeting target for a search.' "

See also *Hattersley v. State,* 487 S.W.2d 354 (Tex. Cr. App. 1972); *People v. Bleile,* 33 Cal. App. 3d 203, 108 Cal. Rptr. 682 (1973); and *State v. Wolfe,* 5 Wash. App. 153, 486 P. 2d 1143 (1971).

For a fuller discussion of the underlying principles, see Note, *Mobility Reconsidered: Extending the Carroll Doctrine to Movable Items,* 58 Iowa L. Rev. 1134 (1973). Also see Note, *The Warrantless Search of a Suitcase Carried by Arrestee Is Constitutionally Permissible Even Though There Is No Danger That the Arrestee Will Get to the Suitcase to Obtain a Weapon or Destroy Evidence,* 9 Houston L. Rev. 140 (1971).

On the basis of both the persuasive example of our sister jurisdictions and the inherent logic of the proposition, we hold that a warrantless search of a suitcase (or carton, box, briefcase or other container) is constitutionally permissible whenever 1) there is probable cause to believe that it contains contraband or other evidence of crime and 2) there are exigent circumstances (to wit, a danger, arising out of actual or imminent mobility, that the evidence will be destroyed or removed).

### Exigency in Tucson

We have no difficulty in concluding that Detective Schwartz in Tucson was faced with an exigency at the moment when he developed, through his sense of smell, probable cause to believe that the two yellow suitcases

contained marihuana. The suitcases were already consigned to American Airlines and both the suitcases and their owner were scheduled to depart shortly for Dallas and Baltimore. It was simply impractical even to attempt to obtain a warrant.

In dealing with similar situations, the case law is both instructive and unanimous. In *United States v. Valen, supra,* a special agent of the U.S. Customs Office was held to have been faced with an exigency when two suitcases, in which he smelled marihuana, were scheduled for shipment to Scranton "within the hour." The Third Circuit there held, at 471:

> "They [the suitcases] were due to leave Tucson by air within the hour. They were destined for Scranton, Pennsylvania, with at least one plane change at New York. The agent did not know then whether the freight company was committed to shipping these bags on this particular flight. On the basis of these circumstances, considered at the time of Clements' action, without the benefit of hindsight or later developments, it was reasonable for the agent to recognize the very real possibility that the contraband could disappear: an air freight handler could have removed the contraband in Tucson, New York, or Scranton. Thus, it was reasonable for him to conclude that a very real possibility existed that the government could lose the contraband, important evidence of a possible violation of federal laws."

In *People v. McKinnon, supra,* an exigency was found for the warrantless search of five cartons then consigned to a common carrier for shipment from San Diego to Seattle. In distinguishing that situation from the "non-exigency" of *Coolidge v. New Hampshire, supra,* the California Supreme Court found, at 500 P. 2d 1105:

> "Here, in sharp contrast, law enforcement authorities had not 'known for some time' of the existence or probable contents of the five cartons

presented by defendants for shipment; although defendants were not deliberately fleeing, both were departing from the premises and one was already on board an airplane preparing to fly out of the jurisdiction; the cartons were not resting on private property, but had been consigned to a common carrier for transportation to a remote destination; . . ."

In *State v. Wolfe, supra,* the Court of Appeals of Washington found sufficient exigency to justify the warrantless search of a suitcase consigned to United Airlines for a flight from Portland to Seattle where only several hours intervened between the development of probable cause and the scheduled departure of the aircraft. The court there held, at 486 P. 2d 1145:

"The next flight the suitcase was to be shipped on was from 3 to 5 hours after its delivery to the REA agent. The process of phoning the sheriff, going to the airport, and testing the powder took at least 3 hours. There was no showing of sufficient time to obtain a search warrant, and we believe a case of impracticability of securing a warrant was amply established."

In *Hernandez v. United States, supra,* the Ninth Circuit found exigency for the warrantless search of two suitcases consigned to a flight from Los Angeles to New York, where less than two hours intervened between the first suspicion and the scheduled departure. A similar result was reached in *People v. Gordon,* 10 Cal. App. 3d 454, 89 Cal. Rptr. 214 (1970).

The defense contention that police officials might have been able to dissipate the exigency then facing them either 1) by requesting the airline officials to hold the luggage or 2) by relying upon officers in other jurisdictions at the scheduled terminal points to obtain the warrants and make the searches was well answered by the Court of Criminal Appeals of Texas in *Chaires v. State, supra,* at 480 S.W.2d 199:

"It is uncontested that the airliner was scheduled to leave for Washington, D. C., at 9:00 A.M. and that the entire episode began shortly after 8:30 A.M. when appellant arrived at the airport. We, therefore, find no merit in appellant's contention that since the Austin police knew the craft would be continually airborne for over two and one half hours, they should have refrained from action and instead wired their suspicions ahead to Washington, D. C., officials. Likewise, we find no merit in his other contention that since the airline officials had the authority to withhold the luggage from the flight, they should have done so, and thereby afforded officials an opportunity to obtain a warrant. Such an approach disregards the practical aspects of law enforcement. When the Austin police were informed that the contraband was aboard an airliner, due to depart in minutes, they had probable cause to inspect the suspect cargo and, after verifying the agents' suspicions, to seize it and arrest its owners, before one or all were flown from their jurisdiction."

See also *Hattersley v. State, supra.*

The turning over of the suspect containers to the baggage handlers is not a prerequisite to the finding of exigency, of course; exigent circumstances could just as easily be presented in the case of carry-on packages. In *People v. Bleile, supra,* a security search of a flight bag revealed no metallic objects or other items directly relevant to the purposes of the security search. The attendant, however, in opening the flight bag for security purposes, then incidentally developed probable cause to believe that an enclosed laundry bag contained marihuana. Although the defendant was standing by, the California Court of Appeal, Second District, eschewed reliance upon any "search incident" theory and upheld the warrantless search of the laundry bag on the theory of "probable cause plus exigency." The court there said, at 108 Cal. Rptr. 685:

"Here the laundry bag was contained inside

appellant's carry-on flight bag, which appellant intended to take with him onto the airplane. In *People v. McKinnon,* . . . the Supreme Court held that when the police have probable cause to believe a chattel consigned to a common carrier contains contraband, they may seize and search it without a warrant because otherwise it will be shipped out of the jurisdiction. The well established rule that because of its mobility an automobile may be searched without a warrant if there is probable cause to believe it contains contraband . . . was applied to boxes, trunks and other things readily moved. The *McKinnon* principle is applicable here. Had appellant been permitted to do so, he would have taken the bag out of the jurisdiction on an airplane. Since Marshal Nichols had probable cause to believe the laundry bag contained marijuana, he was entitled to search the bag without a warrant."

When, therefore, Detective Schwartz 1) developed probable cause to believe that the suitcases contained marihuana and 2) was faced with the threat of their imminent removal before a warrant could practicably be obtained, his warrantless search in Tucson was constitutionally unassailable. The appellant's argument based upon the "fruit of the poisonous tree" doctrine is, therefore, moot.

### The Seizure in Maryland

We look now to the ensuing events several hours later in Maryland. It has already been established that when the appellant and his suitcases arrived at Friendship Airport, Corporal Pitt had ample probable cause to believe that the suitcases contained marihuana, as well as ample probable cause to arrest the appellant for the crime, then being committed, of possessing the marihuana. Armed with that probable cause, Corporal Pitt's subsequent actions were constitutionally appropriate upon either of two overlapping theories.

Deciding that the seizure in Maryland was good, however,

is easier than articulating a *ratio decidendi*, because the two available supporting theories are exasperatingly commingled. For normative purposes, however, it is necessary that we attempt to unscramble the "search incident" analysis from the "probable cause plus exigency" analysis.

## A. *Exigency in Maryland*

Looking forward in point of time from 11:24 p.m., the exigency facing Corporal Pitt was apparent. A civilian was walking away with the two suspect suitcases. In this regard, it was immaterial whether the person walking off with the suitcases was the ultimate arrestee or someone else. That would be a critical factor only under the "search incident" theory, not under the "probable cause plus exigency" theory. In terms of exigency, the threat of removal and subsequent loss would be just as dire whether the removing agent was the appellant, an airline employee, a taxicab driver, an innocent relative or friend of the appellant, a confederate for whom no probable cause existed, an airport thief, or simply an unwitting stranger who picked up the wrong luggage by mistake. The common denominator is that the evidence was disappearing.

Looking backward in point of time from 11:24 p.m., the exigency is arguably more tenuous. Three and one-half hours had elapsed between the first "view telephone" contact between Corporal Pitt and Detective Schwartz, beginning at 7:45 p.m., and the scheduled arrival of flight 324 at Friendship. We are, however, dealing with evening hours and not with the magistrate's "working day." Geography was a further factor and travel was already necessitated between the State Police Barracks and Friendship Airport. Corporal Pitt himself undertook to check with American Airlines in order to confirm the scheduled arrival time of the flight from Dallas. Detective Schwartz and Corporal Pitt had, moreover, arranged to stand by their telephones awaiting confirmation from Detective Lee in Dallas that neither the appellant nor his suitcases had left the flight during the stopover and that they were, indeed, ultimately

airborne toward Baltimore. That confirmation came from Detective Schwartz to Corporal Pitt at approximately 9:30 p.m. Being realistically practical, we are persuaded that Corporal Pitt was faced with exigent circumstances making his warrantless action reasonable. Cf. *King and Mobley v. State*, 16 Md. App. 546, 557-559, 298 A. 2d 446, 452-453; *Bailey v. State*, 16 Md. App. 83, 102-107, 294 A. 2d 123, 134-137; and *Peterson, Deal and Hunt v. State*, 15 Md. App. 478, 491-492, 292 A. 2d 714, distinguishing "nonexigency" under *Coolidge* from the more typical *Carroll-Chambers* situations, where there is a practical necessity to act.

The final effort of the appellant to deny exigency is the argument that Corporal Pitt could have simply immobilized or detained the two suitcases after their seizure, thereby freezing the situation until search warrants could be obtained. It is the clear lesson of *Chambers*, however, that for Fourth Amendment purposes, there is no measurable difference between a search and a seizure. Once the constitutional threshold has been crossed so that the Fourth Amendment protection must yield to the demands of criminal detection, it will yield as a whole. Efforts to draw circles within circles, requiring that the Fourth Amendment yield for certain purposes but not for others or attempting to ascertain which intrusion is the greater and which is the lesser, might intrigue medieval scholastics but would hopelessly harass a workaday criminal justice system. A similar defense was advanced in *People v. McKinnon, supra,* to which the California Supreme Court answered, at 500 P. 2d 1104:

> "In the language of the United States Supreme Court decisions, 'common sense dictates' that when the police have probable cause to believe a chattel consigned to a common carrier contains contraband, they must be entitled either (1) to search it without a warrant or (2) to 'seize' and hold it until they can obtain a warrant; absent these remedies, the chattel will be shipped out of the jurisdiction or claimed by its owner or by the consignee. *Chambers* teaches us, however, that in

those circumstances there is no 'constitutional difference' between the alternatives thus facing the police: an immediate search without a warrant, says the *Chambers* court, is no greater an intrusion on the rights of the owner than immobilization of the chattel until a warrant is obtained, and 'either course. is reasonable under the Fourth Amendment'."

A similar claim was made by the defendant in *United States v. Valen, supra.* The Third Circuit provided a similar answer, at 471:

"At oral argument, Valen contended that at best the government had the right to 'seize' and detain for a reasonable time, *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), but no right to 'search.' However, as *Chambers* indicated with respect to temporary detention as an alternative to an immediate warrantless search, '[W]hich is the 'greater' and which the 'lesser' intrusion is itself a debatable question. . . .' 399 U.S. at 51, 90 S.Ct. at 1981. Applying the language of that case to the case at bar:

'For constitutional purposes, we see no difference between on the one hand seizing and holding a [suitcase] before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search with a warrant. . . . [Where there is the danger of disappearance of contraband] there is little to choose in terms of practical consequences between an immediate search without a warrant and the [suitcases'] immobilization until a warrant is obtained.'

399 U. S. at 52, 90 S. Ct. at 1981.

Accordingly, we hold that Clements' warrantless search of the suitcases was constitutionally permissible."

We hold that the warrantless seizure and ensuing opening of the suitcases by Corporal Pitt was constitutionally proper upon the theory of "probable cause plus exigency in the case of movable chattels." That it was also proper, as will hereinafter be discussed, as a "search incident" to a lawful arrest was simply coincidental. A seizure capable of standing on its own two feet constitutionally does not lose its independent stature simply because it happens to fall within the search perimeter drawn by *Chimel.* A valid search or seizure may be "independent of a lawful arrest" as well as "incidental to a lawful arrest" even within *Chimel's* orbit.[5]

### B. *Search Incident in Maryland*

When we move on to the "search incident" analysis, of course, the question of exigency loses all relevance. It is not a necessary condition to a warrantless arrest or to its attendant search incident. All the opportunity in the world to obtain a warrant will not defeat a warrantless arrest or warrantless search incident to that arrest. Nor is probable cause to believe that weapons or evidence will be found a necessary condition. On the other hand, the status, as a lawful arrestee, of the person searched and the restricted compass of the search incident do suddenly take on a significance which they lack under the "probable cause plus exigency" analysis.

In the present case, the pedigree of the appellant as one lawfully arrested was unimpeachable. The probable cause which ran to his suitcases ran just as inexorably to him. Our problem is but to draw about the arrestee the circle contemplated by *Chimel* and then to determine whether the

---

**5.** *Hernandez v. United States, supra,* is an excellent example of such an analysis. In validating a warrantless search of two suitcases, it was careful to keep its supporting theories distinct, at 627:

"We hold that the search was not incident to appellant's subsequent arrest in the upstairs bar—not because it was too 'remote in time or place from the arrest' . . . (a question we do not reach) — but rather, because the search was in fact independent of the arrest. Sergeant Butler did not go to the storage area to arrest appellant and incidentally search him and his bags. . . . His sole purpose was to search the bags."

preventive action taken by the police fell within the perimeter requiring such preventive action (*i.e.*, insuring that the arrestee 1) could not grab for a weapon to injure the arresting officers or make good his escape and 2) could not destroy readily accessible evidence).

The appellant was arrested in the baggage claim area as he was carrying the two suitcases in his hands. The suitcases were taken from his person. He and the suitcases were taken directly to a private office, up one flight of stairs, where the suitcases were opened in his immediate presence. We find no even arguable problem under *Chimel* because, in the circumstances of this case, we think the critical police action for measurement under *Chimel* was the seizing of the suitcases from the hands of the appellant downstairs and not the opening of the suitcases in the presence of the appellant upstairs. The police were seizing what they already had overwhelming reason to believe was contraband, albeit contraband carried in containers.

This was not the usual exploratory search dealt with in a typical "search incident to arrest." Under the facts of this case, we see little difference between the seizure of the two suitcases, known to contain 18 bricks of marihuana, and the seizure of so many bricks of marihuana carried nakedly in the hands. The opening of the suitcases was not, in a true sense, a search—certainly not an exploratory search. The police were not looking for possible weapons or seeking to prevent the destruction of possible evidence. They were simply processing known instrumentalities containing known contraband and confirming what they already had compelling reason to believe. Once a known container of contraband is seized as such, we do not believe that any additional constitutional predicate is required to open it and to examine and process its contents. The seizure of the suitcases in the case at bar was analytically akin, in our judgment, to a seizure from the hands of a defendant of glassine bags containing heroin or brown paper bags containing lottery slips. Once such containers are seized, no warrant is required to open them and to analyze their contents. With what was already known to Corporal Pitt,

the actual opening of the suitcases, after their undoubtedly proper seizure, was no more legally significant than the ensuing opening of the plastic packages in which each brick of marihuana had carefully been wrapped. Every descent deeper into a Chinese box puzzle does not require a fresh constitutional justification.

In dealing with a somewhat similar airport seizure of suitcases in *State v. Lohss and Sprenkle,* 19 Md. App. 489, 313 A. 2d 87, Chief Judge Orth said for this Court, at 19 Md. App. 505:

> "In this case, moreover, the State troopers already had ample probable cause to believe that the suitcases contained contraband marijuana. The police were simply seizing what they already knew to be probable evidence, albeit the evidence was inside the suitcases. At the moment of seizure, the suitcases were still in the hands of the arrestees and therefore pre-eminently within the perimeter drawn by *Chimel v. California,* 395 U. S. 752, around the person of an arrestee."

We do not intimate what the answer might be, had the appellant been arrested as a draft dodger, a rapist, a stock swindler or a scofflaw, and had his luggage, having no probable evidentiary significance, simply been transferred from the crowded lobby to the upstairs office as a protective courtesy. In that event, of course, the critical action, the geography of which would have been significant under *Chimel,* would have been the subsequent opening of the suitcases and not their initial seizure. We do not have that situation before us, however,[6] and that problem may live to be resolved another day.

Probable cause having been established, we find the warrantless seizure of the suitcases in Maryland and the subsequent opening of them to have been constitutionally

---

**6.** It would seem that the removal of the source of danger (the arrestee) from the potentially dangerous or destructible objects would be the governing criterion under *Chimel.* But see the sweepingly broad language of the Supreme Court in *United States v. Edwards,* 14 Cr. L. 3147 (decided March 26, 1974).

regular, either as an incident to a lawful arrest or as an exigent search and seizure of a movable chattel. In either event, the motion to suppress the evidence was properly denied.

*Judgment affirmed.*