CORNISH *v.* STATE

[No. 68, September Term, 1957.]

*Decided December 16, 1957.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Irvin S. Friedman,* with whom was *Fred Oken* on the brief, for appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Frank H. Newell, III, State's Attorney for Baltimore County,* and *Douglas G. Bottom. Assistant State's Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Charles Cornish appeals from judgment and sentence that followed his conviction of the crime of possession of lottery slips. The Baltimore County police suspected that Cornish was engaging in lottery operations. By a happy coincidence (for them), they received an official teletype bulletin from the Department of Motor Vehicles, revealing that Cornish's driver's license had been revoked, as well as his date of birth, color and weight, and the make, year, color, and license tag number of an automobile registered in his wife's name. The police also came to know that Cornish usually wore the same hat and coat and that his wife's car was customarily driven by him. Armed with all this information, two detectives in plain clothes, Lt. Allender and Sgt. Bates, went down to Turner Station, hoping to intercept Cornish in the act of operating the car on a revoked license so that they could arrest him and, in the doing, perchance uncover evidence of lottery activity. Waiting in their police car, the officers saw- Mrs. Cornish's automobile being driven by a man who fitted the description they had, and they followed. Cornish drove the car into an alley, preparatory to backing out so as to head in the opposite direction, and Lt. Allender alighted from the police car and approached him, exhibiting his police badge. Cornish stopped the car and opened the left front door. Lt. Allender asked him if he was Charles Cornish and when the reply was "Yes", asked if he had an operator's license. Cornish took the car key from the ignition and with it opened the glove compartment which was in the center of the dashboard. As he did so, Lt. Allender and Sgt. Bates (who by this time had parked the police car and joined his confrere)

looked at the compartment to be sure, they said, that Cornish did not take a gun or other weapon from it, and their wary vigilance was rewarded by the sight of numbers slips and money in the compartment. Cornish took a driver's license from the compartment and showed it to Lt. Allender, who thereupon remarked that the license had been revoked. Cornish promptly replied: "That's right * * *." Both of the detectives said that only then was Cornish arrested and the slips and the money seized. The only testimony was that of the two officers. Cornish did not take the stand.

He asks us to find that his arrest was unlawful and, therefore, that the evidence seized as a result was inadmissible and complains that the testimony of the arresting officers as to the information sent them by the Department of Motor Vehicles should not have been received in evidence. The trial court felt that Code, 1951, Art. 66½, Sec. 96, providing that the operator of a motor vehicle shall carry his license whenever he drives and that the license "shall be subject to examination upon demand by an uniformed officer of the law", was applicable and held that the arrest for driving under a revoked license and the possession of lottery slips was lawful on the authority of *Bradley v. State,* 202 Md. 393, 398. There it was held proper for a policeman in uniform, who had stopped a motorist and demanded to see his license, to make an arrest upon seeing lottery slips in his possession. We think it unnecessary to turn the decision on these grounds. The statute relied on in the *Bradley* case in terms specifies that the policeman be in uniform (for reasons that seem apparent), and the officers in the case before us were not. We think that the record before us makes it plain that there was no arrest until after the policemen had seen appellant driving, saw that his license was invalid, heard him admit it had been revoked, and saw the lottery slips in his possession. The arrest, therefore, was for misdemeanors committed in the officers' presence, and valid. *Griffin v. State,* 200 Md. 569; *Blager v. State,* 162 Md. 664.

In *B. & O. R. R. Co. v. Cain,* 81 Md. 87, and *Balto. & Ohio R. Co. v. Strube,* 111 Md. 119, 127, this Court has built a working definition of an arrest—the detention of a known

or suspected offender for the purpose of prosecuting him for a crime. It has been said that there is detention only when there is a touching by the arrestor, although some cases have found a detention where there was no touching but the offender, upon being told that he was under arrest, submitted. Certainly, where there is no touching the intention and understanding of the parties are decisive for, if there is to be an arrest in such case, there must be an intent on the part of one to arrest the other and an intent on the part of such other to submit. See *"The Law of Arrest in Maryland", Kauffman,* 5 *Maryland L. Rev.* 125, 132, *et seq.;* 4 *Am. Jur., Arrest,* Sec. 2, at 5, 6. Appellant does not contend and nothing in the record indicates that the detectives touched Cornish until after the revelation of the revoked license and the lottery slips. The intention and understanding of the officers and Cornish as to what was transpiring seem clear. Both Lt. Allender and Sgt. Bates testified (and cross-examination did not shake their testimony on the point) that they did not intend to arrest Cornish unless and until their beliefs as to his identity and the fact that he was operating under a revoked license were established. There is no showing that Cornish considered that he was under arrest or submitting to arrest when the officers accosted him, or that he other than willingly answered the questions asked him. He makes the claim that the police car blocked the alley so that he could not have backed out, and that this constituted an arrest, but the claim lacks factual support. The record leads to the conclusion, unimpeached, that the police car halted in the middle of the street opposite the mouth of the alley just momentarily so that Lt. Allender could get out and then was parked immediately at the curb.

One is not arrested when he is approached by a police officer and merely questioned as to his identity and actions. This amounts to no more than an accosting. In *Blager v. State,* 162 Md. 664, cited above, Judge Urner said for the Court at pages 665 and 666: "The appellant, being suspected of conducting illegal lottery operations, was accosted, as he alighted from an automobile, by a police officer, in plain clothes, who, having noticed a package in the appellant's overcoat pocket, said to him: 'I am Sergeant Smith and I

want those lottery tickets that you have on you.' In reply the appellant said: 'There they are in my coat pocket. Take them.' " It was held that the subsequent arrest was lawful because the admission by Blager that he had lottery tickets in his possession amounted to the commission of a misdemeanor in the presence of the officer. The Court said that if Blager "* * * had been merely passive and silent, when confronted with the sergeant's implied accusation, he would have been immune from any police interference until a warrant had been procured." It was further held that the lottery slips had been lawfully seized and were admissible in evidence against him. In *Robinson v. State,* 200 Md. 128, there was an accosting not essentially dissimilar from that in the case before us and the Court relied on the *Blager* case in finding that there was credible evidence from which the trial judge could have found that the accused voluntarily handed over the lottery tickets and money to the police, and that because their possession had become visible to the police, the offense had been committed in their presence. See also *State v. Gulczynski* (Court of General Sessions of Del.), 120 A. 88, 89, where the suspect was asked on the street by a policeman what he had in a package and answered "liquor", and the arrest that followed was held valid. The Court said: "The officer in this case was in uniform, and the accused, therefore, knew he was accosted by an officer, and no doubt thought he was bound to stop when approached. But we do not think the mere fact that an officer in uniform walks up to a person on the street and asks him what he has in his package, or on his person, is enough to constitute an arrest. The officer, when he approached the man and questioned him, no doubt suspected he had intoxicating liquor in his package, and the accused may have thought he was under arrest because of his guilty knowledge, and the officer's questions, but we do not think these facts and circumstances are sufficient to show an arrest before the accused admitted his package contained liquor." See, too, a note in 37 *Mich. L. Rev.* 311, 313, which discusses the distinction the cases have drawn between an accosting and an arrest.

If Cornish had not stopped, and answered the questions

asked him, he might have been immune from valid arrest, as was pointed out in the *Blager* case. He chose to stop and give the answers requested and, in so doing, revealed the commission of a misdemeanor to the police. This being so, he was lawfully arrested and the evidence seized as a result of that arrest was admissible.

We find no merit in the contention that testimony of the police officers as to the information given them by the Department of Motor Vehicles was inadmissible. It may well be that if the arrest had preceded the knowledge of the revoked operator's license and of the possession of the lottery slips, it still would have been lawful on the theory that the police had reasonable grounds to believe that a misdemeanor had been and was being committed in their presence and reasonably believed Cornish to be the misdemeanant. It is not necessary to decide this question, and we do not, but if a decision had been required, the evidence point raised by the appellant might have been pertinent and material. On the record, as we have read it, the information given the police by the Department of Motor Vehicles served merely to show the reasonableness of their accosting Cornish and we think there was no error in its admission. In any event, there was no prejudice produced by its consideration because if the police had accosted Cornish by mere chance and he had admitted guilt and committed a misdemeanor in their presence, the result would not be different.

*Judgment affirmed, with costs.*