# WAUGH *v.* STATE OF MARYLAND

[No. 112, September Term, 1974.]

*Decided May 16, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Charles Duvall Smith,* with whom were *Taylor & Smith* on the brief, for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General* and *Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Frank Weathersbee, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

After a jury trial in the Circuit Court for Anne Arundel County (Melvin, J., presiding), petitioner William B. Waugh was convicted of possession of marijuana with intent to distribute, was sentenced to three years' imprisonment, and was fined $3,000.00. The Court of Special Appeals affirmed,

*Waugh v. State,* 20 Md. App. 682, 318 A. 2d 204 (1974), and this Court granted a writ of certiorari. The only issue before the Court of Special Appeals and before this Court was whether certain evidence should have been suppressed on the ground that it was obtained as a result of a search in violation of the Fourth Amendment to the United States Constitution. In our view, the evidence was obtained as a result of an unconstitutional search and, therefore, should have been suppressed.

The underlying facts on the Fourth Amendment issue were developed at a suppression hearing on November 1, 1972, and at the trial itself on May 16, 1973. On October 6, 1972, Waugh filed a motion to suppress evidence, which was heard by the circuit court on November 1. Maryland State Police Corporal Warren Pitt was called as a witness by the State, and he was the only witness at the hearing on the motion to suppress. Corporal Pitt testified that on August 22, 1972, he was assigned to investigate violations of the laws relating to controlled dangerous substances at Baltimore's Friendship International Airport. Pitt stated that on August 22, he received a call from Lt. Tomlin of the Baltimore City Police Department, who advised Pitt that Police Detective Schwartz, of Tucson, Arizona, had telephoned Lt. Tomlin concerning a shipment of marijuana believed to be en route to Baltimore on that day. At 7:45 p.m., Corporal Pitt telephoned "by view telephone" Detective Schwartz of the Tucson "Metropolitan Narcotics Unit" who gave Pitt a complete description of the petitioner Waugh. Detective Schwartz informed Corporal Pitt that Waugh had left Tucson on American Airlines Flight 324, and that after a stop in Dallas, Texas, Flight 324 was due to arrive at Friendship Airport at 11:25 p.m. Schwartz told Pitt that Waugh would be in possession of two yellow "American Tourister" suitcases containing a total of eighteen bricks of marijuana.

With respect to how Detective Schwartz knew that the suitcases contained marijuana, Corporal Pitt testified at the suppression hearing as follows (emphasis supplied):

"He advised me that on information received from a

reliable confidential informant, he went to the airport on information that this subject and the bags, or luggage contained the marijuana. As a result of this information he advised me that he went to the airport, observed the luggage, observed the subject, as I described, and *smelled what he knew to be marijuana from his past experience.* He advised me that he had been in law enforcement for approximately ten to twelve years. And from his experience and his arrests had led to prior convictions for narcotic violations. As a result of the smelling of the suitcases and the information from the informant, [he] in fact, did open the two pieces of luggage and did, in fact, observe thirty-one bricks of marijuana in the above suitcases."

Corporal Pitt went on to testify that Detective Schwartz advised him that Schwartz had removed thirteen of the bricks, leaving eighteen bricks of marijuana remaining in the suitcases. Pitt stated that he had no personal knowledge of Schwartz's ability to detect the odor of marijuana and that he did not know why Schwartz had removed the thirteen bricks.

Pitt did not, after receiving the information from Schwartz, obtain an arrest warrant or a search warrant. Instead, he spent the remaining four hours until arrival of the flight establishing the arrival location of the aircraft and, with the aid of two other officers, setting up a surveillance of the baggage claim area. After the flight arrived, Corporal Pitt observed Waugh, as previously described by Detective Schwartz, entering the baggage claim area. When Waugh picked up the two suitcases, the officers approached him, identified themselves as law enforcement officers, and informed him that he was under arrest. All three officers then took Waugh, along with his luggage, to a second-floor office in the airport, and advised him of his constitutional rights. A search of the luggage was conducted and revealed eighteen bricks of marijuana and personal articles belonging to Waugh.

At the conclusion of the suppression hearing, counsel for Waugh argued, *inter alia*, that the search of the suitcases in Tucson was unlawful because there was no showing that Schwartz had a warrant and because Schwartz's statements concerning an informant and Schwartz's smelling the odor of marijuana coming from the suitcases, were insufficient to establish probable cause for the search. Waugh's attorney went on to argue that the unlawful search in Tucson "vitiated" the subsequent search at Friendship Airport. The court, however, denied the motion to suppress. In finding that Detective Schwartz in Tucson had probable cause to believe that the suitcases contained marijuana, the court specifically relied on the evidence indicating that Schwartz smelled the odor of marijuana coming from the suitcases.

On the day of the trial, May 16, 1973, prior to the beginning of the trial, Waugh filed a "Renewed Motion To Suppress Evidence" and asked for a renewed hearing on the matter of suppression of the evidence obtained from the search of the suitcases. In the renewed motion, Waugh alleged that the testimony at the prior suppression hearing was inaccurate, in that Detective Schwartz in Tucson did not smell the odor of marijuana coming from the suitcases but in fact smelled "a sweet odor which . . . had proved in the past to be a cover-up" for marijuana.[1] It was asserted that, therefore, Schwartz did not have "probable cause to make entry into the suitcases." At the beginning of the trial on May 16, the trial judge denied the renewed motion to suppress and the request for a hearing on the ground that the "matter has already been determined" by the court at the suppression hearing.[2]

Corporal Pitt was called as the State's first witness at the trial and his testimony was, for the most part, the same as at the suppression hearing. However, Corporal Pitt's trial testimony differed in one material respect from his earlier testimony. At the suppression hearing Pitt stated that

---

1. Counsel for Waugh apparently learned of this as a result of a "Motion for Discovery" filed after the suppression hearing.
2. The trial judge was not the same judge who had made the ruling at the suppression hearing.

Detective Schwartz had told him that Schwartz smelled the odor of marijuana coming from the suitcases. At the suppression hearing, Pitt said nothing about any other odor. However, during cross-examination at the trial, Pitt testified:

"At the time of the conversation with Detective Schwartz over the phone on the 22nd day of August, 1972, he advised me that he had smelled an odor of marijuana and also what he recognized as being a cover-up odor commonly used, talcum powder for example."

More significantly, Corporal Pitt testified that subsequent to his telephone conversation with Detective Schwartz, Schwartz sent Pitt a written report in which Schwartz stated that the *only* odor which he smelled was "an odor that he recognized as a cover-up for marijuana," apparently talcum powder.

After the trial, Waugh filed a motion for a new trial, raising again the constitutionality of the search of his suitcases, and arguing that Detective Schwartz lacked probable cause to search the suitcases in Tucson. During the hearing on the motion, Waugh's attorney relied on the trial testimony disclosing that Detective Schwartz had actually smelled something other than marijuana. In denying the motion for a new trial, the trial judge reiterated that he believed himself to be "bound by [the] . . . ruling" at the suppression hearing.

In affirming Waugh's conviction, the Court of Special Appeals first held that Corporal Pitt had probable cause to search the suitcases at Baltimore's Friendship Airport because Detective Schwartz had told Pitt that Schwartz had actually seen the bricks of marijuana in the suitcases. The Court of Special Appeals went on to hold that the rationale of cases involving warrantless searches of vehicles, *i.e.,* the so-called *Carroll* doctrine,[3] was fully applicable to the

---

**3.** Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). *See also* Coolidge v. New Hampshire, 403 U. S. 443, 91 S. Ct. 2022, 29

28

warrantless search of suitcases, and that, therefore, probable cause to believe that the suitcases contained evidence of crime, coupled with exigent circumstances, rendered a warrantless search of suitcases constitutionally permissible. Reliance was placed on several cases from other jurisdictions holding that the *Carroll* doctrine is applicable to searches of suitcases, trunks, and other movable containers.[4] Alternatively, the Court of Special Appeals held that the search by Officer Pitt in Baltimore could be justified as a search incident to a lawful arrest under the principles set forth in *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685, *reh. denied*, 396 U. S. 869, 90 S. Ct. 36, 24 L.Ed.2d 124 (1969). *See also United States v. Robinson*, 414 U. S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973); *Howell v. State*, 271 Md. 378, 318 A. 2d 189 (1974).

For the search at Friendship Airport to have been lawful under either the *Carroll* doctrine or as a search incident to a lawful arrest, Corporal Pitt must have had probable cause to have searched the suitcases or to have arrested Waugh. As previously mentioned, the Court of Special Appeals found the requisite probable cause in Detective Schwartz's telling Corporal Pitt that Schwartz had seen the bricks of marijuana in the suitcases. However, Waugh's position,

L.Ed.2d 564, *reh. denied*, 404 U. S. 874, 92 S. Ct. 26, 30 L.Ed.2d 120 (1971); Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419, *reh. denied*, 400 U. S. 856, 91 S. Ct. 23, 27 L.Ed.2d 94 (1970); Dyke v. Taylor Implement Mfg. Co., 391 U. S. 216, 88 S. Ct. 1472, 20 L.Ed.2d 538 (1968); Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879, *reh. denied*, 338 U. S. 839, 70 S. Ct. 31, 94 L. Ed. 513 (1949); Scher v. United States, 305 U. S. 251, 59 S. Ct. 174, 83 L. Ed. 151 (1938); Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 74 A.L.R. 1407 (1931); England v. State, 274 Md. 264, 334 A. 2d 98 (1975); Mobley and King v. State, 270 Md. 76, 310 A. 2d 803 (1973), *cert. denied*, 416 U. S. 975, 94 S. Ct. 2003, 40 L.Ed.2d 564 (1974).

4. *See, e.g.,* United States v. Valen, 479 F. 2d 467 (3d Cir. 1973), *cert. denied*, 419 U. S. 901, 95 S. Ct. 185, 42 L.Ed.2d 147 (1974); United States v. Johnson, 467 F. 2d 630, 639 (2d Cir. 1972), *cert. denied*, 410 U. S. 932, 93 S. Ct. 1382, 35 L.Ed.2d 595, *cert. denied*, 413 U. S. 920, 93 S. Ct. 3069, 37 L.Ed.2d 1042 (1973); United States v. Mehciz, 437 F. 2d 145 (9th Cir.) *cert. denied*, 402 U. S. 974, 91 S. Ct. 1663, 29 L.Ed.2d 139 (1971); People v. McKinnon, 7 Cal. 3d 899, 103 Cal. Rptr. 897, 500 P. 2d 1097 (1972), *cert. denied*, 411 U. S. 931, 93 S. Ct. 1891, 36 L.Ed.2d 390 (1973); People v. Bleile, 33 Cal.App.3d 203, 108 Cal. Rptr. 682 (1973); State v. Wolfe, 5 Wash. App. 153, 486 P. 2d 1143 (1971).

throughout the proceedings in this case, has been that this information from Detective Schwartz, furnishing the basis for Corporal Pitt's probable cause, was "tainted" or was the "fruit of the poisonous tree" because it was the product of an unconstitutional search by Detective Schwartz in Tucson. As to this contention, the Court of Special Appeals stated that it had "never resolved whether the 'fruit of the poisonous tree' doctrine is or is not available on the issue of probable cause." The Court of Special Appeals went on to hold that it did not have to resolve that question in this case because, in its view, Detective Schwartz's search of the suitcases in Tucson comported with Fourth Amendment requirements. The court held that Detective Schwartz had probable cause to search the suitcases, that he was "faced with an exigency," and that, therefore, his search in Tucson was lawful under the *Carroll* doctrine. In holding that Detective Schwartz had probable cause to have searched the suitcases, the Court of Special Appeals quoted and relied on Corporal Pitt's testimony at the suppression hearing that Schwartz told Pitt that "he smelled what he knew to be marijuana from his past experience." [5]

In light of the position which we take in this case, several of the issues resolved by the Court of Special Appeals need not be decided by this Court. We assume arguendo that, apart from any question of "taint" because of an earlier unlawful search, Corporal Pitt had probable cause to search Waugh's suitcases or to arrest Waugh, based on the information given to him over the telephone by Detective Schwartz, and that Pitt's search of Waugh's suitcases at Friendship Airport was constitutional under either the *Carroll* doctrine, or as a search incident to a lawful arrest, or both. We further assume, without deciding, that if Detective Schwartz had probable cause to believe that Waugh's suitcases contained marijuana, his search of those suitcases

---

5. With respect to smelling the odor of marijuana emanating from luggage as a basis for probable cause to search, *see, e.g.,* United States v. Valen, *supra*; People v. Bleile, *supra*. Concerning the presence of narcotic odors generally as a basis for probable cause, *see* Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

in Tucson would have also been constitutional under the *Carroll* doctrine. Finally we assume, for purposes of this case, that if Detective Schwartz had actually smelled what he believed to be the odor of *marijuana* coming from the suitcases, this would have constituted probable cause for him to have searched the suitcases. Nevertheless, considering the testimony in this case, we conclude that Detective Schwartz did *not* have probable cause to search the suitcases in Tucson and that, therefore, his search violated the Fourth Amendment. Because the information constituting probable cause for Corporal Pitt's arrest and search in Maryland was the direct result of Detective Schwartz's unconstitutional search, the "fruit of the poisonous tree" doctrine required the exclusion at the trial of the evidence obtained by Corporal Pitt's search.

Recently in *Carter v. State*, 274 Md. 411, 337 A. 2d 415 (1975), decided after the decisions by the circuit court and the Court of Special Appeals in the instant case, we stated in an opinion by Judge O'Donnell that, in light of the decisions by the United States Supreme Court, "evidence derived as a result of a prior illegal search for, or seizure of, property, or knowledge gained through such an illegal search . . . [or] seizure, cannot be used, because of its taint, as a valid basis to justify the existence of probable cause in a subsequent search and seizure warrant." Just three days later, in *Everhart v. State*, 274 Md. 459, 337 A. 2d 100 (1975), we reiterated that the decisions of the United States Supreme Court

"compel the conclusion that if data set forth as a basis for the existence of probable cause in an application for a search warrant, was come upon or derived as a result of an illegal search and seizure, such primary illegality — in the absence of evidence of attenuation or a source independent of such 'taint' — precludes the use of such derivative evidence from being a valid basis for establishing the existence of probable cause, under the doctrine of the 'fruit of the poisonous tree'."

We went on to say in *Everhart, supra,* 274 Md. at 481-82:

> "The doctrine of the 'fruit of the poisonous tree' extends the scope of the exclusionary rule to bar not only evidence directly seized, but also evidence indirectly obtained as a result of information learned or leads obtained in the unlawful search; in its broadest sense it prohibits the prosecution from using in any manner, prejudicial to the accused, information derived from facts learned as a result of the unlawful acts of law enforcement agents. Once a defendant, with requisite standing, has timely and factually asserted that the challenged evidence was derived from information obtained in an unlawful search and seizure, the court must afford him an opportunity to explore in detail the circumstances under which the evidence was acquired; if the defendant establishes that the evidence resulted from an unlawful search and seizure such evidence cannot be used at all unless the prosecution can convince the trial court that it had an independent origin or that the information gained in the unlawful search did not lead directly or indirectly to the discovery of the challenged evidence."

Our holdings in *Carter* and *Everhart* were largely based upon the Supreme Court's decisions in *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A.L.R. 1426 (1920); *Nardone v. United States,* 308 U. S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939); *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963); and *Alderman v. United States,* 394 U. S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176, *reh. denied,* 394 U. S. 939, 89 S. Ct. 1177, 22 L.Ed.2d 475 (1969).

Both *Carter* and *Everhart* involved information constituting the basis for probable cause in applications for search warrants, whereas the present case involves information constituting the basis for probable cause to engage in a warrantless search. However, this distinction

has no legal significance with regard to the application of the "fruit of the poisonous tree" doctrine. *See Wong Sun v. United States, supra,* 371 U. S. at 484-488. Moreover, the Supreme Court has repeatedly held that the "standards applicable to the factual basis supporting the officer's probable-cause assessment . . . [in effecting a warrantless] search are at least as stringent as the standards applied with respect to the magistrate's assessment" in a warrant situation, *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U. S. 560, 566, 91 S. Ct. 1031, 1036, 28 L.Ed.2d 306 (1971). *See also United States v. Ventresca,* 380 U. S. 102, 105-107, 85 S. Ct. 741, 744-745, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas,* 378 U. S. 108, 110-111, 84 S. Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *Wong Sun v. United States, supra,* 371 U. S. at 479-482; *Jones v. United States,* 362 U. S. 257, 270-271, 80 S. Ct. 725, 735-736, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960).

Turning to the subject case, if Detective Schwartz's search of the suitcases in Arizona was unlawful because Schwartz lacked probable cause, the knowledge resulting from Schwartz's search could not, under our decisions in *Carter* and *Everhart,* be used to justify Corporal Pitt's subsequent search of the suitcases in Baltimore. Under those circumstances, Corporal Pitt's discovery of marijuana would be the "fruit" of the earlier unlawful search.

The information given to Corporal Pitt in Maryland by telephone and by a subsequent written report from Detective Schwartz in Tucson, Arizona, disclosed two possible grounds for the State's contention that Schwartz had probable cause to search the suitcases in Tucson. The first was that Schwartz advised Pitt "that on information received from a reliable confidential informant, he went to the airport on information that this subject and the bags, or luggage contained the marijuana." There was no further information with regard to what the informant said. Thus, there was nothing indicating what led the informant to conclude that narcotics were in the luggage. Other than the bald statement that the informant was "reliable," nothing was said to support an inference that the informant was credible or his information reliable. Neither requirement for

accepting the hearsay statements of an informant as a basis for probable cause, set forth in *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas, supra,* was met here. As the Court stated in *Aguilar,* 378 U. S. at 114:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' "

In the case at bar, there was utterly no information concerning the "underlying circumstances from which the informant concluded that the narcotics were where he claimed they were," and there was no basis for a conclusion that the informant "was 'credible' or his information 'reliable.' " In fact, the statements of Detective Schwartz concerning the informant were almost identical to the statements by the police officers in *Aguilar* concerning the informant there involved, and the Supreme Court held in *Aguilar* that such information was totally insufficient to constitute probable cause to search for narcotics.

The second possible ground for determining that Detective Schwartz had probable cause to search the suitcases, was his smelling an odor coming from the suitcases. Of course, the judge at the suppression hearing was told that Schwartz smelled the odor of marijuana; if this had been true, Schwartz may well have had probable cause to search the suitcases. However, as previously discussed, it was later revealed that Schwartz smelled a substance which was allegedly often used as a cover-up for marijuana, and which was apparently talcum powder. Smelling the odor from a traveler's suitcase of an ordinary cosmetic like talcum powder, which is commonly carried in suitcases, does not

constitute probable cause for searching the suitcase for marijuana. Otherwise, probable cause might exist to make warrantless searches of a relatively high percentage of the nation's travelers. Talcum powder is a well known cosmetic used by many individuals.

An analogous situation was present in *Spinelli v. United States, supra.* In that case, the FBI suspected that Spinelli was engaged in illegal bookmaking, using a particular apartment to conduct the illegal business. In obtaining a warrant to search the apartment, the FBI, *inter alia,* relied upon the fact that there were two independent telephone lines in the apartment. In holding that the FBI had shown probable cause for searching the apartment, the United States Court of Appeals for the Eighth Circuit said (382 F. 2d at 880):

> "Though one may have numerous legal uses for two independent telephone lines in a private apartment they are somewhat unusual, and are suspicious to the degree that multiple telephones are a common characteristic of a gambling operation."

The Supreme Court, however, rejected the idea that any reliance could be placed on this factor, saying (393 U. S. at 414):

> "... there is surely nothing unusual about an apartment containing two separate telephones. Many a householder indulges himself in this petty luxury."

Similarly, even if talcum powder is often used as a cover-up for marijuana, like multiple telephones are often used in bookmaking operations, there is also nothing unusual about the suitcases of innocent people containing talcum powder. "Many a ... [traveler] indulges himself in this petty luxury." A normal occurrence like the smell of talcum powder coming from a suitcase cannot even be considered as a reasonable ground to search the suitcase.

Finally, we wish to comment upon the procedure to be employed in cases presenting the same problem as existed

here. While Maryland Rule 729 g 2 provides that a trial judge may treat the denial of a motion to suppress at a prior suppression hearing as "binding at the trial," this is discretionary and not mandatory, and the rule goes on to permit "the trial judge, in the exercise of his discretion ... [to grant] a hearing *de novo* on the defendant's renewal of his motion or objection." When the renewed motion to suppress evidence was filed in this case, setting forth allegations to the effect that the testimony at the suppression hearing was not fully accurate, that Detective Schwartz smelled the odor of something other than marijuana, and that the basis for the ruling at the suppression hearing that Schwartz had probable cause had been undermined, the trial judge should have, in the exercise of his discretion, granted a hearing and explored the matter.

*Judgment of the Court of Special Appeals reversed.*

*Case remanded to that Court with directions to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case for a new trial.*

*Costs to be paid by Anne Arundel County.*