# BOULDIN *v.* STATE OF MARYLAND

[No. 76, September Term, 1975.]

*Decided January 6, 1976.*

512

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Michael R. Malloy, Assistant Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General,* and *Gilbert Rosenthal, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant Franklin Delano Bouldin was found guilty by a jury in the Criminal Court of Baltimore of possession of heroin with intent to distribute and with possessing a manufactured article (a motorcycle) from which the serial number had been removed, defaced, or obliterated; he was sentenced to 10 years' imprisonment. In *Bouldin v. State,* 26 Md. App. 545, 338 A. 2d 404 (1975), the Court of Special Appeals affirmed the convictions in a detailed opinion written for the Court by Judge Lowe. We granted certiorari to consider the legality of the police search of Bouldin's personal effects made at a time when he was in an unconscious condition in a hospital emergency room.

The evidence adduced at the trial showed that Bouldin was badly injured in an accident while riding his motorcycle on the afternoon of November 22, 1973. He was lying in the street in a semiconscious condition when Officer Donald Aston arrived on the scene to investigate. Aston observed

that a small flight bag which had been lying in the street was returned to Bouldin at his request by an ambulance attendant, as he was being placed in the ambulance. Aston remained at the scene to investigate after the ambulance departed for the hospital. He called police headquarters to ascertain the ownership of the motorcycle and was promptly advised that the license plates had been reported stolen. Aston thereafter observed that the serial number on the motorcycle had been defaced, a misdemeanor in violation of Maryland Code (1971 Repl. Vol.) Art. 27, § 389. He completed his investigation at the scene without ascertaining Bouldin's identity and proceeded to the hospital "to check on . . . [Bouldin's] condition and to place him under arrest."

Prior to Aston's arrival at the hospital, Bouldin had been taken to the emergency room, placed on a stretcher and all his clothing was removed. Consistent with the hospital's policy, Bouldin's wallet and identification cards had been taken from his clothes and placed in safekeeping.

Aston arrived at the hospital about 45 minutes after the accident occurred; he proceeded to the emergency room where he located Bouldin on the stretcher in an unconscious condition. He observed that Bouldin's clothing had been removed and that he was then being attended by a physician. While Aston was familiar with the hospital's policy to remove personal effects of patients for safekeeping, he did not ask and was not told that Bouldin's identity was known to the hospital and that his wallet had been removed from his clothing. Aston observed that Bouldin's clothing and his flight bag were lying on a shelf beneath his stretcher; he picked up the clothing and took it into an adjoining room "to check for driver's license or registration or something." A search of Bouldin's jacket revealed 20 glassine bags of heroin. Aston then removed the flight bag from the shelf beneath the stretcher and held it until narcotics officers, whom he had called, arrived at the hospital. A search of the flight bag uncovered an additional 324 glassine bags of heroin. Thereafter, Bouldin was placed under 24-hour guard at the hospital where he remained for approximately five months.

At the trial, Aston was asked what he did when he arrived at the hospital "with regard to placing Mr. Bouldin under arrest." Aston replied: "I didn't — I didn't tell him that because he was in no condition to carry on a conversation." The heroin seized from Bouldin's jacket and flight bag was admitted into evidence over his objection that the searches were unlawful. The trial judge concluded that Aston had probable cause to arrest Bouldin without a warrant for possession of stolen license tags and for defacing the serial number on the motorcycle. The court then said:

> "The officer did not go through all the formalities of the arrest because the man was being worked on on the table in the hospital, but he was for all intents and purposes under arrest in connection with these two items which the officer had found out . . . . My ruling is that the search of these items was proper because, first of all, it was incident to a lawful arrest; secondly, the officer had the right to try and find out at least from the clothing some identification of the victim; and, thirdly, under the principle of *Waugh vs. State*, 20 Md. App. 682 [318 A. 2d 204 (1974)] this black bag or satchel was the kind of object which could very well have been removed and its contents could have been destroyed and under the theory of the *Waugh* case the officer did have the right to go through that bag and search it under these circumstances."

In affirming the convictions, the Court of Special Appeals disagreed with the trial court's conclusion that the search of Bouldin's clothing had been justified as one conducted in a medical emergency for the purpose of ascertaining identity; it said that the "absence of medical rationale" was obvious from Aston's testimony that his express purpose for going to the hospital was to arrest Bouldin. It concluded that Aston did in fact arrest Bouldin; that due to Bouldin's unconscious condition, strict conformity with technical prerequisites of making an arrest, such as a touching of, or verbal notification to the arrestee, was unnecessary; and that under

the principles of *United States v. Robinson,* 414 U. S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), "grounds for the arrest coupled with the intent of the arresting officer to detain the suspect suffice if the condition of the arrestee precludes the other prerequisites to consummation of a custodial arrest." 26 Md. App. at 553. Having found that the arrest was lawful, the court held that Aston was entitled under *Robinson* to make a full search of Bouldin's "person" incident to the arrest, without regard to the limitations placed on such searches by *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969). The court concluded that Aston was lawfully entitled in the circumstances to search Bouldin's clothing even though it was not literally upon his "person"; it said that "it would be anomalous indeed to hold that the removal of appellant's clothes in an emergency situation somehow extinguished the right to search them incident to his arrest." 26 Md. App. at 554. In approving the search of Bouldin's "person" under *Robinson,* the court said that its decision "in no way condones a curious rummaging about to identify a person merely because he is in a comatose state, short of an emergency or the conditions of arrest shown here." 26 Md. App. at 554. It also approved Aston's search of the flight bag on the independent ground that it was a reasonable procedure under the principles set forth in *Waugh v. State,* 20 Md. App. 682, 318 A. 2d 204, *rev'd on other grounds,* 275 Md. 22, 338 A. 2d 268 (1975).

It is axiomatic that when the State seeks to justify a warrantless search incident to arrest, it must show that the arrest was lawfully made prior to the search. *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777 (1964). Of course, the right to arrest is not equivalent to making an arrest; the record must satisfactorily demonstrate that an arrest was in fact consummated before a warrantless search incident thereto may be found to be lawful. *See Howell v. State,* 271 Md. 378, 318 A. 2d 189 (1974).

It is generally recognized that an arrest is the taking, seizing, or detaining of the person of another (1) by touching

or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. 5 Am.Jur.2d *Arrest* § 1 (1962). It is said that four elements must ordinarily coalesce to constitute a legal arrest: (1) an intent to arrest; (2) under a real or pretended authority; (3) accompanied by a seizure or detention of the person; and (4) which is understood by the person arrested. 6A C.J.S. *Arrest* § 42 (1975); Creamer, *The Law of Arrest, Search and Seizure*, ch. 3, at 49 (1968).

We have defined an arrest in general terms as the detention of a known or suspected offender for the purpose of prosecuting him for a crime. *McChan v. State*, 238 Md. 149, 207 A. 2d 632 (1965); *Cornish v. State*, 215 Md. 64, 137 A. 2d 170 (1957). Our cases make clear, as *McChan* states, that in ordinary circumstances "there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits [but] [w]here there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit." 238 Md. at 157. Ordinarily, therefore, there can be no arrest where there is no restraint or where the person sought to be arrested is not conscious of any restraint. Varon, *Searches, Seizures and Immunities*, ch. 2, § 5, at 101 (2d ed. 1974). At least one court has concluded that an unconscious person cannot be subjected to a valid arrest. *Carrington v. Superior Court*, 31 Cal.App.3d 635, 107 Cal. Rptr. 546 (1973). But, as indicated in Fisher, *Laws of Arrest*, chapter IV, at 52 (1967), it is only where there is no actual manual seizure of the arrested person that his intention or understanding assumes controlling importance. Fisher states at 52-53:

> "Thus an unconscious person may be placed under arrest when his body is actually seized and restrained, even though his *understanding* of his plight is delayed until he recovers consciousness.

> When his person has been taken and made subject to the disposition of the arresting officer, with intention to restrain him in custody of the law, the arrest is complete when this is done. There is sufficient understanding on the part of such a prisoner when he recovers consciousness and finds himself handcuffed, in jail, or perhaps confined to a hospital room with a policeman standing guard over him."

Bouldin claims that Aston's subjective intent and objective actions upon arriving at the hospital were consistent with his purpose to establish identity and not to make a custodial arrest. He contends that the record fails to disclose that Aston remained in his presence in the hospital or arranged for a guard before conducting the searches; that at no time did Aston "outwardly manifest an arrest, either to him or to hospital personnel in control of his movements"; that to justify a search incident to an arrest, the search must be "essentially contemporaneous with the arrest and that no arrest took place contemporaneously with the search of the jacket"; and that a lawful arrest took place only after the search of the jacket and flight bag when the police placed him under an around the clock police guard.

The State argues that since Bouldin was unconscious when Aston arrived at the hospital, he was not required to tell him that he was under arrest or to touch him to consummate the arrest. The State contends that when Bouldin's condition is taken into consideration, "it would have been an exercise in futility had Officer Aston told the unconscious appellant that he was under arrest." The State suggests that Bouldin was placed under arrest when Aston "came into visual contact" with him at the hospital, and that Aston's intent to arrest was alone determinative since there could not have been an intent on Bouldin's part to submit during his unconscious state.

Assuming arguendo that Aston had probable cause to arrest Bouldin for misdemeanors committed in his presence, Code, Art. 27, § 594B, we cannot agree with the Court of Special Appeals that Aston's subjective mental intention to

arrest Bouldin, coupled with grounds to make the arrest, provided an adequate legal foundation upon which to arrest an unconscious person under principles enunciated by the Supreme Court in *United States v. Robinson, supra.* Nothing in that case even remotely supports such a proposition; it dealt with the purpose of a search incident to a lawful arrest and, as correctly noted by the Court of Special Appeals in *Dixon v. State,* 23 Md. App. 19, 27, 327 A. 2d 516, 521 (1974), that case "did not alter, the 'wingspan' limitation of *Chimel,* whereunder a search incident is limited to that area within the lunge, within the reach, within the grasp of the arrestee — the area 'which may fairly be deemed to be an extention of his person' — the area within which the arrestee might grab for weapons or destroy evidence."

While we think an unconscious person can be validly arrested in some circumstances, Fisher, *Laws of Arrest, supra,* to consummate an arrest of such an individual, there must be an objective manifestation of acts or words unequivocally showing that an arrest is being made, that the arrestee is being detained or restrained, and his person brought within the custody and control of the law. A ritualistic touching is hardly required in such circumstances in order to effectuate an arrest, nor is communication of the fact of arrest to an unconscious person either possible or prerequisite to a valid arrest. The principles set forth in *Cornish* and *McChan* were plainly not intended to govern detention of unconscious persons. We think that where the right to arrest an unconscious person exists, the requisite detention of his person may be effectuated without force or without any physical restraint, so long as the acts or conduct of the arrestor sufficiently demonstrate that the arrestee is within his power or control.

That Bouldin was under arrest at the time of the search of the jacket is not reflected by the record before us. There was no evidence that Aston, immediately prior to or contemporaneously with the search of the jacket, had taken Bouldin into custody. He said nothing and did nothing before searching Bouldin's clothing to indicate to anyone in control

of Bouldin's medical care and movements that Bouldin was under arrest. Indeed, there was no evidence that Bouldin was subject to Aston's physical dominion any earlier than when the guard was posted subsequent to the seizure of the heroin from the jacket and flight bag. While the testimony at trial is capable of differing interpretations as to the actual time of arrest, the only interpretation supportive of an arrest prior to the search of the jacket is based solely on Aston's claimed subjective intention that he went to the hospital to arrest Bouldin. It is true that during the course of the trial Aston responded affirmatively to the question whether Bouldin was "subsequently placed under arrest," but this response does not establish whether the arrest was made prior to or after the search of the jacket and flight bag, nor does it give any indication how Aston effected the arrest. More significant and to the point was Aston's testimony that he did not arrest Bouldin upon arriving at the hospital because Bouldin was unconscious and he could not communicate with him.

In *Howell v. State, supra,* involving a search incident to an arrest, we reversed a conviction for failure of the record to disclose, among other things, when or where the arrest was made; we said there that the court cannot fill gaps in the record with conjecture, nor substitute surmise for positive proof, and that "care should be taken by the State in presenting its case to insure that there will be sufficient evidence, if any exists, placed in the record to justify the execution of a warrantless search incident to a lawful arrest." 271 Md. at 386.

While we think Judge Lowe was correct in emphasizing the element of detention in effectuating the arrest of an unconscious person, rather than the technical prerequisites to arrest articulated in *Cornish* and *McChan*, the record simply does not show the requisite police restraint or control of Bouldin's person at the time the searches were made. We emphatically reject the State's notion that the arrest took place upon Aston's eyeball contact with the unconscious Bouldin as he lay on the stretcher, and conclude, on the record made in this case, that the search of the jacket was

not incident to a valid arrest. Consequently, the heroin seized both from the jacket and flight bag was erroneously admitted into evidence over Bouldin's objection.

In view of our conclusion, we do not reach the alternative holding of the Court of Special Appeals that the warrantless search of the flight bag was permissible under the so-called "automobile exception" articulated in *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), as explicated in *Waugh v. State, supra,* on the ground that the flight bag was a portable object, that there was probable cause to believe it contained illegal narcotics, and there were exigent circumstances creating a danger that the evidence would be destroyed or moved. Of course, proof of the element of probable cause was dependent upon the discovery of narcotics in the jacket, and that search being unlawful, could not be used to justify the search of the flight bag. We express no opinion whether the *Carroll* doctrine would be applicable in the circumstances of this case to Bouldin's flight bag in the emergency room of a hospital.

Nor do we address ourselves to the holding of the Court of Special Appeals that the search of the jacket could not be justified as an emergency search for identification of the victim. The State did not file a cross-petition for certiorari to review this issue and we have not, therefore, considered it.[1]

> *Judgment of the Court of Special Appeals affirming the conviction of possession of heroin with intent to distribute under Criminal Information No. 27400416 reversed; case remanded to that court with directions to vacate the judgment of the Criminal Court of Baltimore and remand the case for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

---

1. Bouldin did not seek review of his conviction for violating Code, Article 27, § 389.