619 A.2d 538

**Earl POWERS**

**v.**

**STATE of Maryland.**

**No. 91, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 10, 1993.

José Felipe Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, Specially Assigned), JJ.

CHARLES E. ORTH, Jr. Judge, Specially Assigned.

I

Earl Powers was arrested on a street corner in Baltimore City about 8:30 p.m. on 24 May 1991. The arresting officer was Laura Deuerling, a member of the Police Department of Baltimore City, assigned to the Uniformed Patrol in the

Southern District. Powers was searched as an incident to the arrest. Seven bags containing a cocaine base, commonly known as crack, 19 glassine bags of heroin and $70 in United States currency were found on his person and seized by the police.

The State's Attorney for the City of Baltimore filed two Criminal Informations against Powers in the Circuit Court for Baltimore City. The first document informed the court that on or about the day of Powers's arrest, in the 1800 block of Lemmon Street in Baltimore City, Powers violated "Article 19, § 58C of the Baltimore City Code, 1983 Edition." The second document informed the court that on the same day Powers committed four crimes in violation of the Controlled Dangerous Substances Law of Maryland, to wit: possession of cocaine (1st count) and possession of heroin (3rd count), each in sufficient quantity to reasonably indicate under the circumstances an intent to distribute, and simple possession of both cocaine (2nd count) and heroin (4th count). Powers waived a jury trial. He was convicted of committing the offense charged in the first Information, and of the 1st and 3rd counts charged in the second Information. The judge merged the 2nd count into the conviction under the 1st count and the 4th count into the conviction under the 3rd count. Powers was duly sentenced and noted an appeal to the Court of Special Appeals from the judgments. On our own motion, we certified the case to us before decision by the intermediate appellate court.

## II

Before trial, Powers sought to dismiss the Information charging a violation of Art. 19, § 58C of the Baltimore City Code on the grounds that the law was unconstitutional on its face and as applied to him. He also sought to suppress the contraband and evidence seized for the reason that his arrest was illegal.

## A

The heart of this appeal is, of course, the Baltimore City ordinance, now appearing as Art. 19, § 58C of the Baltimore

City Code, 1983 Repl.Vol., 1991 Cum.Supp.[1]  In 1989 the City Council of Baltimore found and declared

> that the illegal manufacture, distribution, possession, and administration of drugs and other unlawful drug-related activities is a city-wide evil of substantial and urgent proportions constituting a clear and present danger to the citizens of the City; that innocent persons, including children, who come into contact with illegal drug-related activity are seriously and adversely affected and their health and safety are jeopardized by the violence and materials (such as discarded syringes) associated with these practices....

Subsection (a) of Art. 19, § 58C.[2]  The City Council adopted a comprehensive scheme as "a necessary exercise of the police power to maintain the peace, good government, health and welfare of Baltimore City." *Id.*  The scheme

---

1. Section 2 of the original ordinance, No. 375, ordained that it remain in effect for a period of one year from its enactment on 11 July 1989, and "with no further action required by the Mayor and City Council shall be abrogated and of no further force and effect." Section 4 ordained that the ordinance shall take effect on the date of its enactment.

   Ordinance No. 561A was enacted 26 June 1990. Section 1 repealed § 2 of Ordinance No. 375 and rescinded the expiration date. Section 2 of Ordinance 561A ordained that it take effect on the date of its enactment.

2. The General Assembly of Maryland has evidenced a like concern. *See* Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 276(a).

   The concern of the City Council of Baltimore and the General Assembly of Maryland was not without good cause. In 1992 a record number of 335 murders were committed in Baltimore City, about half of which were drug motivated. Ten murders were committed in the first week of 1993. We recognized in *Coleman v. State,* 321 Md. 586, 589, 583 A.2d 1044 (1991), "the dominant extent to which the rampant illicit dealings in drugs have intruded, both flagrantly and insidiously, into the life of the community and the lives of the people." The impact on the community and the people was graphically pictured in three articles in The Baltimore Sun on 29 December 1992, § A, page 1; 1 January 1993, § C, page 1; and 3 January 1993, § A, page 1. The demand for drugs is insatiable; the supply of drugs is inexhaustible; the violence is appalling. Usual police methods for enforcement have proved to be inadequately marked by the fear of the people to cooperate and the ever increasing criminal activity.

was designed to aid the enforcement of the Controlled Dangerous Substances Law enacted by the General Assembly of Maryland. It entailed the creation of "drug free zones" in geographical areas of Baltimore City, certified as such by the Police Commissioner of Baltimore City. § 58C(e)(1). Paragraph (2) of subsection (e) spells out the criteria for the certification by the Commissioner of a drug free zone, and paragraph (3) thereof lists in detail the procedural steps to be taken prior to certification. Subsection (b) creates the crime of drug related "loitering." Subsection (c) deals with the determination that a person has violated the provisions of subsection (b). Subsection (d) requires that

[a] police officer shall first request a person suspected of loitering under this section within a drug free zone to leave the premises. Failure to obey the police officer shall subject the person to arrest.

Subsection (f) makes a violation of Art. 19, § 58C a misdemeanor and prescribes a sentence of "imprisonment for not more than 30 days or a fine of not more than $400, or both."

B

The trial judge conducted a plenary hearing which covered both the motion to dismiss and the motion to suppress. He denied both of them.

The place where Powers was arrested was within a certified drug free zone. A large part of the hearing focused on the constitutionality of the ordinance and the validity of the certification by the Police Commissioner of the area in which Powers was arrested as a drug free zone. We are not concerned on this appeal with these matters. We assume for the purpose of decision here that Art. 19, § 58C is not constitutionally offensive. Our assumption is not to be taken as any suggestion or indication whatsoever that we deem that the ordinance does or does not conform to constitutional dictates. Ordinarily we do not decide a question on constitutional grounds when it may be determined on non-constitutional bases. "Constitutional issues

should be addressed only after a determination that the activity complained of comports with the requirements of this State's nonconstitutional law." *Brittingham v. State,* 306 Md. 654, 660, 511 A.2d 45 (1986) and cases therein cited. We do not depart from that general rule here. It is simply that in the light of the decision which we reach in this case, there is no need for us to address the matter of the constitutionality *vel non* of Art. 19, § 58C. We leave that to another day and another case. By like token we assume, but only for the purpose of decision here, the validity of the certification as a drug free zone of the area in which Powers was arrested. We proceed on the basis that the certification was in full compliance with all of the requisites of the ordinance and that the certification was in full force and effect at the time Powers was arrested.

Our concern focuses on the legality of the arrest of Powers. To determine that question we look to the evidence adduced at the hearing with respect to the motion to suppress.

### III

### A

The only evidence adduced at the hearing with respect to the circumstances surrounding the arrest of Powers was the testimony of Officer Deuerling. The State offered her "as an expert in the field of drug trafficking within the Southern District only...." She was examined and cross-examined at length as to her qualifications. The judge accepted her as an expert as proposed by the State. We give a compendium of her testimony.

On 24 May 1991 Deuerling, in uniform and on routine patrol, had two encounters with Powers. About 4:30 p.m. she was in the 100 block of South Addison Street, which is located in Post 933 within the Southern Police District of Baltimore City. It "is one of the highest drug trafficking areas in Southern District...." It was within an area duly designated and posted as a drug free zone. The officer saw

Powers standing at the corner of the 100 block of Addison Street and the 1800 block of Lemmon Street with several other people, some of whom lived in that block and some who did not. She knew him from seeing him on other occasions and from information about him received from fellow police officers. She was aware that he had "been convicted of narcotic violations." She approached him and, although she recognized him, asked his name and address. He complied. The address he gave was without the drug free zone. She asked him why he was in the area. He said that he was visiting a girl. The officer asked the name of the girl. At the time of the hearing the officer did not remember the name Powers gave. The officer also asked where the girl lived. She did not testify as to what Powers responded, but explained, "Because of the name that he had said at that time, I remember not recognizing it as to someone that lived in that area." It is obvious that she simply did not believe that Powers was in the area to visit a girl, but she did not press him on the matter or investigate it further. She merely pointed out that "he was not around any ... females." The officer asserted that Powers was free to leave during her conversation with him, but she made clear that he was not free to stay. She "advised him that he was loitering in a drug free zone, and asked him to move on." He moved on, "[r]ather slowly, but he did." She did not arrest him. "It was simply a warning."

### B

██ The City Council of Baltimore created a new misdemeanor in these words:

It is unlawful for any person to loiter about or remain at any public way, public place or place open or legally accessible to the public within a certified drug free zone, as herein provided for the purpose of engaging in drug-related activity that is prohibited by any of the provisions of Article 27, Crimes and Punishments, subtitle, Health–Controlled Dangerous Substances of the Annotated Code of Maryland, as amended, relating to the manufacture,

distribution, sale, possession, or administration of substances covered therein.

Art. 19 § 58C(b). Thus, the elements of the offense are:

(1) loitering [3] or remaining

(2) at any public way, public place or place open or legally accessible to the public

(3) within a certified drug free zone

(4) for the purpose of engaging in drug-related activity prohibited by the Maryland Controlled Dangerous Substances Law.

We shall assume, for the purpose of decision, that the first three elements were satisfied. The question is whether the evidence was sufficient to satisfy the fourth element requiring a specific intent.

Subsection (c) of the ordinance gives some guidance in the determination whether a person is loitering in the places specified "for the purpose of engaging in drug-related activity...." It declares first that "the totality of the circumstances involved shall be considered." It then lists seven circumstances as among those "which may be considered in determining whether such purpose is manifested." We

---

3. The ordinance does not define "loitering." In *Molinari v. State*, 217 Md. 282, 142 A.2d 583 (1958), this Court discussed "loitering" as it appeared in Md.Code (1957) Art. 2B § 120(b). The subsection, applicable to Allegany County, declared it to be unlawful for one granted a license to sell alcoholic beverages "to allow any minor or minors ... to loaf or loiter about the place of business for which such license is issued." Brune, C.J., speaking for the Court, observed:

"Loafing" and "loitering", as used in that subsection, carry the idea or connotation of merely idling and of doing so for some time.... Time and purpose are both factors to be considered in deciding whether a person's conduct constitutes loafing or loitering. Perhaps the most satisfactory equivalent of these terms, as used in this statute, is the colloquial expression "hanging around." No definition based upon any particular length of time would be satisfactory in all circumstances.

217 Md. at 288, 142 A.2d 583. The Court cited to cases in other jurisdictions to the effect that "loitering" meant "to be dilatory, to stand idly around, to spend time idly." *Id.*

shall examine the evidence before us in the light of each of them.

The first circumstance is:

The conduct of the person being observed, including, by way of example only, that such person is behaving in a manner raising a reasonable belief that the person is engaging or is about to engage in illegal drug activity such as the observable distribution of small packages to other persons, the receipt of currency for the exchange of a small package, operating as a 'lookout', warning others of the arrival of police, fleeing without other apparent reason upon the appearance of a police officer, concealing himself or herself or any object which reasonably may be connected to unlawful drug-related activity, or engaging in any other conduct normally associated by law enforcement agencies with the illegal distribution or possession of drugs.

Subsection (c)(1). The evidence does not disclose that Powers's conduct comported with any of the examples. He was merely standing at the corner with several other people, some who lived in the neighborhood and some who did not. He was not observed distributing small packages to other persons, or receiving currency for the exchange of a small package. There was no indication that he was operating as a "lookout," warning others of the arrival of the police. He did not flee upon the appearance of the police officer. He did not conceal himself or any object which reasonably may be connected to unlawful drug-related activity. All the officer observed was that Powers was standing on the public way in the presence of several other persons, none of whom the officer characterized as associated with illicit drug trafficking. Powers was not engaged in any other conduct normally associated by law enforcement agencies with the illegal distribution or possession of drugs. On the contrary, he said that he was there to visit a girl, and the officer made no attempt to disprove this because she did not recognize the girl's name (which she did not remember at the time of the hearing) and because she saw no females in

his presence. The required purpose was not shown under the first circumstance.

The second circumstance is:

Information from a reliable source indicating that the person being observed routinely distributes illegal drugs within the drug free zone.

Subsection (c)(2). The officer did not indicate that she had such information.

The third circumstance is:

Information from a reliable source indicating that the person being observed is currently engaging in illegal drug-related activity within the drug free zone.

Subsection (c)(3). There was no evidence of the receipt of such information.

The fourth circumstance is:

Such person is physically identified by the officer as a member of a 'gang' or association which engages in illegal drug activity.

Subsection (c)(4). The officer did not so identify Powers.

The fifth circumstance is:

Such person is a known unlawful drug user, possessor, or seller. A 'known unlawful drug user, possessor, or seller' is a person who has, within the knowledge of the arresting officer, been convicted in any court of any violation of a referenced provision of the referenced state code involving the regulation, use, possession, purchase, or sale of any of the substances referred to therein, or convicted of violating a substantially similar provision of federal law or such law of any other jurisdiction; or a person who displays physical characteristics of drug intoxication or usage, such as dilated pupils, glassy eyes, or 'needle tracks'; or a person who possesses drug paraphernalia as defined in Section 287a of Article 27 of the referenced Annotated Code of Maryland;

Subsection (c)(5). The officer was aware that Powers had been convicted of violations of the Controlled Dangerous Substances Law. She did not state that Powers displayed

physical characteristics of drug intoxication or usage nor did she testify that she observed that Powers possessed drug paraphernalia.

The sixth circumstance is:

Such person has no other apparent lawful reason for loitering or remaining in the drug free zone (e.g., such as waiting for a bus or being near one's own residence).

Subsection (c)(6). Powers told the officer that he was there to visit his girl. The officer took no action to disprove this.

The seventh circumstance is:

Any vehicle involved in the observed circumstances is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding arrest warrant for a crime involving drug-related activity.

Subsection (c)(7). No vehicle was involved.

We consider the totality of the circumstances surrounding the first encounter about 4:30 p.m. as shown by the evidence before us. It is patently insufficient to support a determination that Powers was in the certified drug free zone for the purpose of engaging in prohibited drug-related activity. The only circumstance of probative value in a determination of the existence of the proscribed activity was Powers's prior narcotics convictions. We hold that the fourth element of the misdemeanor was not established.

C

In the event that there is a proper determination that a person is committing the misdemeanor created by Art. 19, § 58C(b), the person is not thereby subject to arrest. The ordinance commands in subsection (d) that

[a] police officer shall first request a person suspected of loitering under this section within a drug free zone to leave the premises.

It is only the "[f]ailure to obey the police officer" that subjects the person to arrest. As we have seen, Powers was not arrested on the first encounter with the police officer. But, the officer, attempting to comply with the

dictates of the ordinance, "advised him that he was loitering in a drug free zone, and asked him to move on;" Powers did so.

Actually, Powers did not have to comply with the officer's request to leave. In order for a person to be subject to arrest for failure to obey a request to leave, there must first be a proper determination that the subject of the request is loitering within the certified drug free zone "for the purpose of engaging in [prohibited] drug-related activity...." The phrase "suspected of loitering" in subsection (d) is surely with regard to such a determination being properly reached. Here, as we have found, the circumstances were not sufficient to support such a determination. Therefore, if Powers had failed to leave as requested, he would not have been subject to arrest. In other words, the request by the officer for Powers to leave the area had no legal significance whatsoever in the contemplation of the ordinance; there was no proper basis justifying the request. If he had been arrested upon failure to leave, his arrest would have been illegal; he could have remained with impunity.

### D

█ Officer Deuerling had a second encounter with Powers that same day, some four hours later. She was still working her shift. At 8:30 p.m. she returned to the 1800 block of Lemmon Street. She saw Powers on Lemmon Street about half a block from Addison Street, some 48 feet from the corner where he had been standing four hours before. He was again within the certified drug free zone.

> [Powers] had his back to me. He was engaged in conversation with several other people, a few of which I do know because I've arrested [them] before for narcotic violations.

Powers, still with his back to the officer, "put a large roll of currency [in bill form] into his left front pocket." The people with whom he was talking "looked in [the officer's]

direction and quickly walked away." Powers turned and saw the officer. She approached Powers and

advised him that he was loitering in the drug free zone, which I had warned him once four hours prior that he was not to do. I then placed him under arrest.

She searched him incident to the arrest. She recovered $70, 19 bags of white powder which proved to be heroin and seven small bags containing "a rock material" which proved to be crack.

We assume for the purpose of decision, but do not decide, that the additional circumstances observed at the second encounter, considered in the light of the totality of all of the circumstances involved, were sufficient to manifest that Powers was loitering for the purpose of engaging in drug-related activity. Even on this assumption, his arrest was illegal.[4] The reason is that Powers was entitled to a request to leave the area at the time of the second encounter. Officer Deuerling proceeded under the assumption that the request to leave she tendered at the first encounter carried over to the second encounter, and that no further request was necessary. But in no event could that request satisfy the command of the ordinance with respect to the second

---

**4.** We note that

[a] police officer who has probable cause to believe that a ... misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have committed such offense.

Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 594B(b). Even if an officer has authority to arrest under subsection (b) of the general law, when the misdemeanor is that of loitering prohibited by the Baltimore City Code (1983 Repl.Vol., 1991 Cum.Supp.) Art. 19, § 58C, the ordinance intervenes to make any arrest subject to a refusal of a request to leave.

We also note that a police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed an offense proscribed by the Controlled Dangerous Substances Law. Md.Code Art. 27, § 594B(e)(1) and (f)(x). It is certain that Officer Deuerling had no probable cause to believe that Powers was violating the Controlled Dangerous Substances Law.

The trial judge remarked that he had made "it very clear that without the ordinance I would not have found probable cause [to arrest]." For a discussion of probable cause *see Collins v. State,* 322 Md. 675, 679–680, 589 A.2d 479 (1991).

encounter, for as we have seen, the request made was not warranted under the circumstances. As to the arrest of Powers at the second encounter, it was as if no request to leave had ever been made. Therefore, even if Powers was in violation of the loitering ordinance when he returned to the area, he was then entitled to a request to leave, and was subject to arrest only if he failed to do so. Since the required request to leave was not made, his arrest was illegal.

## IV

Upon the denial of the motion to dismiss, the propriety of which we do not reach, and the denial of the motion to suppress the evidence, which we have deemed to be erroneous, Powers agreed to be tried by the court under pleas of not guilty on the evidence received at the hearing on the motions, supplemented by certain physical evidence such as the laboratory analysis of the substances seized and certain testimonial evidence, as, for example, that the officer would testify that, in her opinion, the drugs were in sufficient quantity to indicate an intention to distribute. Powers's motion for judgment of acquittal was denied. Whereupon the court rendered the verdicts of guilty.

The narcotics and money received in evidence at the trial on the merits were obtained by the police upon a search and seizure incident to an arrest which we have found to be illegal. Therefore the articles were obtained in violation of the guarantee of the Fourth Amendment to the Constitution of the United States against unreasonable searches and seizures. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) taught us that evidence obtained as the result of an unconstitutional search and seizure should not be admitted in a State criminal prosecution. See *Edwardsen v. State*, 231 Md. 332, 336, 190 A.2d 84 (1963); *cf. Bouldin v. State*, 276 Md. 511, 515, 350 A.2d 130 (1976) (arrest must be lawful). The denial of the motion to suppress enabled the items seized to go before the court as the trier of fact in its determination of Powers's guilt or inno-

cence. This was error that compels reversal of the judgments. We reverse them.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED;

CASE REMANDED TO THAT COURT FOR A NEW TRIAL ON THE CRIMINAL INFORMATION CHARGING THE FOUR VIOLATIONS OF THE CONTROLLED DANGEROUS SUBSTANCES LAWS.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.